# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-1821

_____

Hennepin County, on behalf of itself and all others similarly situated

*Plaintiff - Appellant*

v.

Federal National Mortgage Association, a federally chartered corporation; Federal Home Loan Mortgage Corporation, a federally chartered corporation; Federal Housing Finance Agency, as Conservator for Federal National Mortgage Association and Federal Home Loan Mortgage Corporation

*Defendants - Appellees*

------------------------------

United States of America

*Amicus on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: December 19, 2013
Filed: February 5, 2014

_____

Before MURPHY, BYE, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Hennepin County brought this putative class action on behalf of similarly situated Minnesota counties seeking a declaratory judgment that the Federal National Mortgage Association (Fannie Mae), the Federal Home Loan Mortgage Company (Freddie Mac), and the Federal Housing Finance Agency (FHFA) (the federal agencies) violated state law by failing to pay a tax on transfers of deeds to real property. The County seeks recovery for unjust enrichment as well as injunctive relief. The district court[1] granted the federal agencies' motion to dismiss for failure to state a claim. Hennepin County appeals, and we affirm.

Fannie Mae and Freddie Mac are privately owned and publicly traded for profit entities created by Congress to generate financial stability in the secondary market for residential mortgages. Given responsibility by Congress for "promot[ing] access to mortgage credit . . . by increasing the liquidity of mortgage investments," 12 U.S.C. § 1716(1), Fannie Mae and Freddie Mac buy mortgages originated by third party lenders, gather them into bundles, and sell them as securities. Following the 2008 financial crisis, which was caused in part by a collapse in the value of these securities, Congress made the FHFA the conservator for Fannie Mae and Freddie Mac.

Fannie Mae and Freddie Mac have acquired and sold mortgages on thousands of real properties in Minnesota, including in Hennepin County. Minnesota imposes a tax on "each deed or instrument by which any real property in this state is granted, assigned, transferred, or otherwise conveyed," Minn. Stat. § 287.21, subd. 1(a). The federal agencies have not paid state taxes on the deed transfers related to their real property transactions. Hennepin County alleges that the agencies owe the state an

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

estimated $5,000,000 to $5,600,000 in back taxes on these transfers. Fannie Mae, Freddie Mac, and the FHFA assert that their federal charters exempt them from such taxes.

Hennepin County filed this putative class action on behalf of itself and 86 other Minnesota counties seeking a declaratory judgment under Minn. Stat. § 287.21 that the federal agencies are subject to Minnesota's deed transfer tax. It seeks payment of back taxes, recovery for unjust enrichment, and injunctive relief. The federal district court concluded that the Minnesota deed transfer tax fell within the broad tax exemption established by the charters establishing the federal agencies. It declined to grant the requested declaratory judgment in favor of Hennepin County, dismissed its case for failure to state claims under either § 287.21 or unjust enrichment, and denied injunctive relief. Hennepin County appeals.

Our review is de novo on a challenge to a dismissal for failure to state a claim, and we take the facts alleged in the complaint as true. Bradley Timberland Resources v. Bradley Lumber Co., 712 F.3d 401, 406 (8th Cir. 2013). When interpreting a statute, we look to its plain language, Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc., 651 F.3d 857, 862 (8th Cir. 2011), and give words their "ordinary, contemporary, common meaning" unless they are otherwise defined in the statute itself. United States v. Friedrich, 402 F.3d 842, 845 (8th Cir. 2005). Unambiguous statutory language is generally enforced as written and may be departed from only on "the most extraordinary showing of contrary intentions in the legislative history." United States v. Sabri, 326 F.3d 937, 943 (8th Cir. 2003) (internal quotation marks omitted). The existence of statutory exceptions indicates that Congress considered whether there was need for any exception and "limited the statute to the ones set forth." United States v. Johnson, 529 U.S. 53, 58 (2000).

The federal agency charters state that they "shall be exempt from all taxation . . . imposed by any State," and identify their real property as the sole exception to the general rule. 12 U.S.C. §§ 1723a(c)(2); 1452(e); 4617(j)(2). We have determined that the use of "shall" in a statute makes what follows mandatory, LeMay v. U.S. Postal Serv., 450 F.3d 797, 799 (8th Cir. 2006), and that "'all' means all." Sander v. Alexander Richardson Invs., 334 F.3d 712, 716 (8th Cir. 2003). Application of these interpretive rules indicates that the federal agencies are exempt from all state taxation other than taxes on their own real estate holdings.

The Sixth Circuit has previously addressed an attempted imposition on the FHFA of a Michigan real estate transfer tax similar to the Minnesota deed transfer tax. In County of Oakland v. Federal Housing Finance Agency, that court reasoned that "a straightforward reading of the [agency's] statute leads to the unremarkable conclusion that when Congress said 'all taxation,' it meant all taxation." 716 F.3d 935, 940 (6th Cir. 2013) (emphasis in original). We agree with this reading of the exemption language in the FHFA charter which is identical to that found in the charters of Fannie Mae and Freddie Mac. Minnesota's deed transfer tax is a tax imposed by the state on the transfer of real property, not on the real property itself. It therefore does not fall within the real property exception to the agencies' broad tax exemptions. We conclude that Fannie Mae, Freddie Mac, and the FHFA are exempt from Minnesota's deed transfer tax.

We disagree with Hennepin County's argument that the Supreme Court decision in United States v. Wells Fargo Bank, 485 U.S. 351 (1988), limited the meaning of "all taxation" in an exemption statute to mean only "all direct taxation." In Wells Fargo, the Court was considering the scope of a tax exemption created by the Housing Act of 1937 for local financing instruments called "project notes," which had been created to address the national housing shortage. Id. at 353. After reviewing its precedent involving statutory tax exemptions for certain types of property, the Court

concluded that "[w]ell before the Housing Act was passed, an exemption of property from all taxation had an understood meaning: the property was exempt from <u>direct</u> taxation, but certain privileges of ownership, such as the right to transfer the property, could be taxed." <u>Id.</u> at 355 (emphasis in original). The Housing Act had designated the project notes themselves to be exempt from taxation, saying nothing about their transfer. <u>Id.</u> Because the estate tax in the <u>Wells Fargo</u> case was an excise tax levied <u>not</u> on the notes themselves, but rather on their "use or transfer," the Court concluded that the owners of the notes were subject to the tax. <u>Id.</u> at 355–56.

In reaching this conclusion in <u>Wells Fargo</u>, the Court did nothing to disturb its prior holding in <u>Federal Land Bank of St. Paul v. Bismarck Lumber Co.</u>, 314 U.S. 95 (1941). In <u>Bismarck Lumber</u>, the Court had considered whether the Federal Farm Loan Act exempted federal land banks from having to pay North Dakota sales tax. The Farm Loan Act stated that "'every Federal land bank . . . shall be exempt . . . from . . . State . . . taxation, except taxes upon real estate." <u>Id.</u> at 96 n.1. The Court held in <u>Bismarck Lumber</u> that "[t]he unqualified term 'taxation' . . . clearly encompasses within its scope a sales tax such as the instant one." <u>Id.</u> at 99. The federal land banks were therefore not subject to the state sales tax. The Court further ruled that the statute's single exception for real estate indicated that the exemption applied to all other taxes. <u>See id.</u> at 100.

Like the North Dakota sales tax in <u>Bismarck Lumber</u>, Minnesota's deed transfer tax is an excise tax. <u>See Rosenow v. State of Ill., Dep't of Rev.</u>, 715 F.2d 277, 279 n.4 (7th Cir. 1983). In contrast to the housing project note exemption in <u>Wells Fargo</u> and like the statutory exemptions Congress created for the federal agencies, the language of the Farm Loan Act in <u>Bismarck Lumber</u> exempted the banks themselves from taxation. <u>Bismarck Lumber</u>, 314 U.S. at 99. Lower courts must follow Supreme Court precedent which directly applies to a case before them, even if such precedent might appear "to rest on reasons rejected in some other line of decisions." <u>Rodriguez</u>

de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484–85 (1989). The Supreme Court has never explicitly or implicitly overruled Bismarck Lumber. Like the Sixth and Seventh Circuits, we conclude that Bismarck Lumber controls the issue in this case. Cty. of Oakland, 716 F.3d at 943; DeKalb Cty. v Fed. Housing Fin. Agency, et al., --- F.3d ----, 2013 WL 6727323, *5 (7th Cir. Dec. 23, 2013). The plain language of the federal statutes creating Fannie Mae, Freddie Mac, and the FHFA exempts them from the Minnesota deed transfer tax. See also, Montgomery Cty., Maryland v. Fed. Nat'l Morg. Ass'n, et al., --- F.3d ----, 2014 WL 279852, *4 (4th Cir. Jan. 27, 2014).

Hennepin County nevertheless argues that the Court's holding in Bismarck Lumber applies only to federal instrumentalities and that the federal agencies do not meet the test set in Lebron v. National Railroad Passenger Corporation. 513 U.S. 374 (1995). The County's reliance on Lebron is misplaced, however, since in that case the Court only considered whether a private entity is a federal instrumentality "for the purposes of the constitutional obligations of Government." 513 U.S. at 399. The question here, in contrast, is whether the entities are governmental instrumentalities which "Congress has the power to protect" through tax exemptions. Bismarck Lumber, 314 U.S. at 102. As the Court stated in Bismarck Lumber, "any constitutional exercise of [the federal government's] delegated powers" is governmental, and "when Congress constitutionally creates a corporation through which the federal government lawfully acts, the activities of such corporation are governmental." Id. Because Congress had constitutionally created the federal land banks to extend loans "on liberal terms to farm borrowers [by] foreclos[ing] mortgages and purchasing the real estate at the resulting sale," the banks are "'instrumentalities of the federal government'" which "Congress has the power to protect" by exempting them from all taxation. Id. at 102.

The facts in this case are nearly identical to those in <u>Bismarck Lumber</u>. Here, Congress constitutionally created Fannie Mae and Freddie Mac to provide liberal access to mortgage credit by buying mortgages, bundling them, and selling these bundles as securities in the secondary market. Hennepin County does not dispute that these federal entities have continued to serve this same mission through the very activities it now wants to tax. The County claims that Fannie Mae and Freddie Mac ceased to be federal instrumentalities upon becoming privatized, but we disagree. As the Seventh Circuit has stated, "Congress's purpose in creating Fannie in the first place—to expand homemortgage lending in the United States—remains federal policy, and therefore remains the policy that private Fannie is obligated, as its sole mission, to promote." <u>DeKalb Cty</u>, 2013 WL 6727323 at *7. We agree that the federal agencies were privatized "in the hope . . . of making [them] more efficient in pursuit of the federal policy that [their] charter[s] require[ them] to pursue." <u>Id.</u> The congressional objective in creating them was "governmental, and unchanged; only the means of achieving it has changed." <u>Id.</u> This objective is written into the agency statutes which only Congress has the power to revise. <u>Id.</u> For all these reasons, no question remains that Fannie Mae, Freddie Mac and the FHFA are governmental instrumentalities which Congress has the authority to protect by exempting them from taxation imposed by the states. <u>See</u> <u>Bismarck Lumber</u>, 314 U.S. at 102.

Finally, we conclude that the district court did not err by denying Hennepin County's claims for unjust enrichment and injunctive relief. Unjust enrichment under Minnesota law occurs when a party "has knowingly received or obtained something of value for which [that party] in equity and good conscience should pay." <u>Schaaf v. Residential Funding Corp.</u>, 517 F.3d 544, 553–54 (8th Cir. 2008) (internal quotation marks omitted). To state a claim, Hennepin County must allege "that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." <u>Id.</u> at 554 (internal quotation marks omitted). Hennepin County alleges that the entities were unjustly enriched by their failure to pay the Minnesota deed transfer tax. Since the federal entities were under no legal obligation to pay these taxes, there is no basis for an unjust enrichment claim nor for an injunction compelling payment.

Since Congress exempted Fannie Mae, Freddie Mac, and the FHFA from all state taxation except on real property, and Minnesota's deed transfer tax falls within this broad exemption, we affirm the district court's dismissal of Hennepin County's claims and the denial of its request for declaratory judgment.

_____