**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CITY OF SPOKANE, on behalf of itself and all others similarly situated, *Plaintiff-Appellant*, <br><br> v. <br><br> FEDERAL NATIONAL MORTGAGE ASSOCIATION, AKA Fannie Mae, a federally chartered corporation; FEDERAL HOME LOAN MORTGAGE CORPORATION, AKA Freddie Mac, a federally chartered corporation; FEDERAL HOUSING FINANCE AGENCY, as conservator for Federal National Mortgage Association and Federal Home Loan Mortgage Corporation, *Defendants-Appellees*, <br><br> UNITED STATES OF AMERICA, *Intervenor-Appellee*. | No. 13-35655 <br><br> D.C. No. 2:13-cv-00020-LRS <br><br><br> OPINION |

On Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, District Judge, Presiding

Argued and Submitted
October 8, 2014—Seattle, Washington

Filed December 30, 2014

Before: Richard A. Paez, Jay S. Bybee, and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Bybee

## SUMMARY[*]

### Statutory Exemption

The panel affirmed the district court's judgment in favor of the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac), and held that Congress exempted Fannie Mae and Freddie Mac from state and local taxation of real property transfers, and that it had constitutional authority to do so.

The panel held that Fannie Mae and Freddie Mac were statutorily exempt from paying real property transfer taxes in Washington. The panel also held that because Congress had power under the Commerce Clause to regulate the secondary mortgage market, it had power under the Necessary and Proper Clause not only to create Fannie Mae and Freddie Mac but also to ensure their preservation by exempting them from state and local taxes. Finally, the panel held that the exemptions did not violate the Tenth Amendment.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Kevin J. Curtis, Winston & Cashatt, Lawyers, Spokane, Washington; Charles T. Conrad, Jr. (argued), Dewsnup, King & Olsen, Salt Lake City, Utah, for Plaintiff-Appellant.

Howard N. Cayne, Asim Varma, Michael A.F. Johnson (argued), Dirk C. Phillips, Arnold & Porter LLP, Washington, D.C., for Defendant-Appellee Federal Housing Finance Agency.

Michael J. Ciatti, Merritt E. McAlister, King & Spalding LLP, Washington, D.C., for Defendant-Appellee Federal Home Loan Mortgage Corporation.

Michael D. Leffel, Foley & Lardner LLP, Madison, Wisconsin; Jill L. Nicholson, Foley & Lardner LLP, Chicago, Illinois, for Defendant-Appellee Federal National Mortgage Association.

Kathryn Keneally, Assistant Attorney General; Tamara W. Ashford, Principal Deputy Assistant Attorney General; Gilbert S. Rothenberg, Jonathan S. Cohen, Patrick J. Urda (argued), Attorneys, Tax Division, Department of Justice, Washington, D.C.; Michael C. Ormsby, United States Attorney, Of Counsel, for Appellee-Intervenor United States of America.

**OPINION**

BYBEE, Circuit Judge:

Congress created Fannie Mae (the Federal National Mortgage Association) and Freddie Mac (the Federal Home Loan Mortgage Corporation) to foster the secondary market for home mortgages. Fannie's and Freddie's statutory charters exempt them from all state and local taxation, except for taxes on the entities' real property. In this appeal, we must decide whether the statutes exempt Fannie and Freddie from paying excise taxes on the *transfer* of real property and, if so, whether the statutory exemptions exceed Congress's authority under the Commerce Clause.

This lawsuit, brought by the City of Spokane, Washington, is part of a wave of similar lawsuits brought throughout the country against Fannie, Freddie, and their conservator, the Federal Housing Finance Agency (FHFA). Several of those cases have made their way to the courts of appeals, and at least six of our sister circuits have now issued published decisions. Every circuit to address Spokane's statutory and constitutional arguments has rejected them. *See Town of Johnston v. Fed. Hous. Fin. Agency*, 765 F.3d 80 (1st Cir. 2014) (rejecting same statutory and constitutional arguments); *Bd. of Comm'rs v. Fed. Hous. Fin. Agency*, 758 F.3d 706 (6th Cir. 2014) (same); *Del. Cnty. v. Fed. Hous. Fin. Agency*, 747 F.3d 215 (3d Cir. 2014) (same); *Montgomery Cnty. v. Fed. Nat'l Mortg. Ass'n*, 740 F.3d 914 (4th Cir. 2014) (same); *DeKalb Cnty. v. Fed. Hous. Fin. Agency*, 741 F.3d 795 (7th Cir. 2013) (same); *Bd. of Cnty. Comm'rs v. Fed. Hous. Fin. Agency*, 754 F.3d 1025 (D.C. Cir. 2014) (rejecting same statutory arguments); *Hennepin Cnty. v. Fed. Nat'l Mortg. Ass'n*, 742 F.3d 818 (8th Cir. 2014) (same);

*Vadnais v. Fed. Nat'l Mortg.*, 754 F.3d 524 (8th Cir. 2014) (rejecting same constitutional arguments).  We agree with our sister circuits and likewise reject Spokane's arguments.

## I

Spokane first argues that Fannie and Freddie are not statutorily exempt from paying real property transfer taxes because such taxes fall under each statute's carve-out for taxes on real property.  *See* 12 U.S.C. §§ 1452(e) (providing that Freddie "shall be exempt from all [state and local] taxation, . . . except that any real property of [Freddie] shall be subject to State [and] local taxation to the same extent . . . as other real property is taxed"), 1723a(c)(2) (same, with respect to Fannie).[1]  We disagree.  Courts have long recognized "the distinction between an excise tax, which is levied upon the use or transfer of property even though it might be measured by the property's value, and a tax levied upon the property itself."  *United States v. Wells Fargo Bank*, 485 U.S. 351, 355 (1988).

Indeed, this distinction is apparent from Washington's statutory scheme.  Washington law separately imposes taxes directly on real property, located in the "Property Taxes" title of the state code, *see* Wash. Rev. Code tit. 84, and taxes on the conveyance of real property, located in the "Excise Taxes" title, *see id.* tit. 82.  The transfer taxes at issue here are of the latter type.  *See id.* §§ 82.45.060 (imposing "an excise tax upon each sale of real property"), 82.46.010(2)(a)

---

[1] FHFA's organic statute contains a materially identical exemption.  *See* 12 U.S.C. § 4617(j)(2).  Because FHFA is sued here only in its capacity as conservator of Fannie and Freddie, we focus our analysis on Fannie and Freddie.

(authorizing cities and counties to impose a similar "excise tax on each sale of real property").

When considered in light of this distinction, it is clear that the statutory carve-outs allowing for the taxation of real property as "other real property is taxed" encompass only property taxes, not excise taxes. *See Montgomery Cnty.*, 740 F.3d at 920. Thus, Fannie and Freddie are statutorily exempt from paying the transfer taxes in Washington.

## II

Spokane next argues that the statutory exemptions exceed Congress's authority under the Commerce Clause. The Supreme Court has identified three broad categories of activity that Congress may regulate under the Commerce Clause: (1) channels of interstate commerce; (2) instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) activities that substantially affect interstate commerce. *United States v. Lopez*, 514 U.S. 549, 558–59 (1995). In determining whether certain activities substantially affect interstate commerce, we may consider the aggregate effect of economic activities, but not the aggregate effect of noneconomic activities. *Compare United States v. Morrison*, 529 U.S. 598, 617 (2000) (rejecting "the argument that Congress may regulate noneconomic . . . conduct based solely on that conduct's aggregate effect on interstate commerce"), *with Gonzalez v. Raich*, 545 U.S. 1, 26 (2005) (distinguishing *Morrison* because the statute in *Raich* "directly regulate[d] economic, commercial activity").

Moreover, Congress is authorized to enact laws "necessary and proper for carrying into Execution" the powers "vested by th[e] Constitution in the Government of

the United States."  U.S. Const. art. I, § 8, cl. 18.  "[T]he Necessary and Proper Clause makes clear that the Constitution's grants of specific federal legislative authority are accompanied by broad power to enact laws that are 'convenient, or useful' or 'conducive' to the authority's 'beneficial exercise.'" *United States v. Comstock*, 560 U.S. 126, 133–34 (2010) (quoting *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 413, 418 (1819)).  The court must therefore "look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power."  *Id.* at 134.

Spokane contends that the regulated activity here is state and local taxation and that taxation is not commerce, but rather "the State exercising its sovereign duties."  Spokane also argues that the tax "is assessed on local, intrastate activity—the buying and selling of parcels of real property in the State of Washington."  Spokane does not dispute, however, that Congress has power under the Commerce Clause to regulate the national secondary mortgage market. Nor does it dispute that chartering Fannie and Freddie was a means rationally related to Congress's regulation of the secondary mortgage market.  Congress created Fannie and Freddie to "establish secondary market facilities for residential mortgages," to "provide stability in the secondary market for residential mortgages," and to "promote access to mortgage credit throughout the Nation."  12 U.S.C. § 1716 (regarding Fannie); *see also id.* § 1451 note (regarding Freddie).  *Cf. McCulloch*, 17 U.S. at 424 (holding that Congress had authority under the Necessary and Proper Clause to charter the Bank of the United States in furtherance of Congress's enumerated powers).

If Congress had the power to create Fannie and Freddie, it follows that it had the power to protect their statutory mission by exempting them from state and local taxes. As Chief Justice Marshall observed in *McCulloch*, because "the power to tax involves the power to destroy," "a power to create implies a power to preserve." *Id.* at 426, 431. Thus, for example, in *Pittman v. Home Owners' Loan Corp. of Washington, D.C.*, 308 U.S. 21, 33 (1939), the Court concluded that a federal statute exempting another federally chartered corporation from state and local taxes showed that "Congress ha[d] undertaken to safeguard the operations of the Home Owners' Loan Corporation by providing . . . [tax] immunity." "This power to preserve," the Court reasoned, "necessarily comes within the range of the express power conferred upon Congress to make all laws which shall be necessary and proper for carrying into execution all powers vested by the Constitution in the Government of the United States." *Id.*

So too here. Congress could rationally have believed that, "absent the statutory exemptions, states might be tempted to target Fannie Mae and Freddie Mac with large taxes, given the sheer volume of their mortgage portfolios and their statutory obligations to continue purchasing and guaranteeing mortgages throughout the country." *Montgomery Cnty.*, 740 F.3d at 924. Moreover, Congress might rationally have believed that, without the exemptions, Fannie and Freddie would be exposed to inconsistent taxation, driving them to shift their purchasing activities to states with lower tax rates, thus undermining their statutory mission to increase mortgage liquidity throughout the country. *See id.*

In sum, because Congress has power under the Commerce Clause to regulate the secondary mortgage market, it has

power under the Necessary and Proper Clause not only to create Fannie and Freddie but also to ensure their preservation by exempting them from state and local taxes. We accordingly hold that the entities' exemption statutes do not exceed Congress's constitutional authority.

## III

Finally, Spokane contends that the exemptions violate the Tenth Amendment. Spokane raises two arguments in this regard. We reject both.

First, Spokane argues that the exemptions "are tantamount to congressional commandeering of state employees" because county clerks "would be required to record deeds from the Enterprises free of charge." But the exemptions do not impose any new affirmative obligation on municipalities. *See Reno v. Condon*, 528 U.S. 141, 151 (2000) (holding that a federal statute did not commandeer state officials where it neither required state legislatures to enact laws or regulations nor required state officials to assist in the enforcement of federal statutes). Rather, they simply preclude state and local governments from enforcing preempted tax laws against Fannie and Freddie. *See Del. Cnty.*, 747 F.3d at 228 ("A state official's compliance with federal law and non-enforcement of a preempted state law—as required by the Supremacy Clause—is not an unconstitutional commandeering.").

Second, Spokane argues more broadly that the exemptions violate general principles of federalism enshrined in the Tenth Amendment. But nothing in the text or structure of the Constitution categorically immunizes state taxation from federal preemption. On the contrary, Congress's dormant commerce authority precludes state taxation that

improperly burdens interstate commerce, and the Constitution's Supremacy Clause precludes state taxation of federal instrumentalities. More to the point, the Supreme Court has long made clear that when Congress properly exercises its enumerated powers, it may lawfully abridge the states' ability to tax. *See, e.g.*, *Brown v. Maryland*, 25 U.S. (12 Wheat.) 419, 448–49 (1827) (reasoning that "the taxing power of the States must have some limits" and that "[i]t cannot reach and restrain the action of the national government within its proper sphere" or "restrain the operation of any law which Congress may constitutionally pass").

The exemptions neither commandeer state and local officials nor transgress general principles of federalism. We therefore reject Spokane's Tenth Amendment arguments.[2]

IV

We hold that Congress exempted Fannie and Freddie from state and local taxation of real property transfers and that it had constitutional authority to do so. Accordingly, the district court's judgment is **AFFIRMED.**

---

[2] Because we conclude that Congress had constitutional authority to exempt Fannie and Freddie from state and local taxation of real property transfers, we need not determine whether Fannie and Freddie are federal instrumentalities such that they are nontaxable under the Supremacy Clause. *See First Agric. Nat'l Bank v. State Tax Comm'n*, 392 U.S. 339, 341 (1968).