[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12615
_____

D.C. Docket No. 2:12-cv-00885-MHT-WC

MONTGOMERY COUNTY COMMISSION, on behalf of
themselves, and all others similarly situated, STEVEN L.
REED, Judge of Probate for Montgomery County,

Plaintiffs-Appellants,

REESE MCKINNEY, JR., Judge of Probate for
Montgomery County, Alabama, on behalf of
themselves and all others similarly situated,

Plaintiff,

versus

FEDERAL HOUSING FINANCE AGENCY, as
conservator for Federal National Mortgage
Association, and Federal Home Loan Mortgage
Corporation, FEDERAL NATIONAL MORTGAGE
ASSOCIATION, a federally chartered corporation,
FEDERAL HOME LOAN MORTGAGE CORPORATION,
a federally chartered corporation,

Defendants-Appellees.

_____

No. 13-12637
_____

D.C. Docket No. 5:12-cv-00355-MTT

CHAIRMAN MAURICE RAINES, Upson County
Board of County Commissioners, and on behalf of all
others similarly situated,

Plaintiff,

ATHENS-CLARKE COUNTY UNIFIED GOVERNMENT,
Athens-Clarke County Unified Government, by and
through Nancy Denson, Chair of the Commission and
Mayor, Athens-Clarke County Unified Government, Georgia,
CLAYTON COUNTY, Clayton County, by and through
Eldrin Bell, Chairman, Board of Commissioners, Clayton
County, Georgia, SUMTER COUNTY, Sumter County,
by and through Randy Howard, Chairman, Board of
Commissioners, Sumter County, Georgia, AUGUSTA,
GEORGIA, Augusta, Georgia, by and through Deke
Copenhaver, Chair of the Commission and Mayor,
Augusta, Georgia, BUTTS COUNTY, Butts County, by
and through Roger McDaniel, Chairman, Board of Commissioners,
Butts County, Georgia, UPSON COUNTY, Upson County,
by and through Maurice Raines, Chairman,
Board of Commissioners, Upson County, Georgia,

Plaintiffs-Appellants,

versus

FEDERAL HOUSING FINANCE AGENCY, as
Conservator for Federal National Mortgage
Association and Federal Home Loan Mortgage
Corporation, FEDERAL NATIONAL MORTGAGE
ASSOCIATION, A Federally Chartered Private Corporation,
FEDERAL HOME LOAN MORTGAGE CORPORATION,

2

A Federally Chartered Corporation,

Defendants-Appellees.

_____

No. 13-13150

_____

D.C. Docket No. 2:12-cv-00553-JES-DNF

CHARLIE GREEN, etc.,

Plaintiff,

LINDA DOGGETT, as Clerk of the
Court for Lee County, Florida, and on
behalf of all others similarly situated,

Plaintiff-Appellant,

versus

FEDERAL HOUSING FINANCE AGENCY, as
Conservator for Federal National Mortgage
Association and Federal Home Loan Mortgage
Corporation, FEDERAL NATIONAL MORTGAGE
ASSOCIATION, a federally chartered corporation,
a.k.a. Fannie Mae, FEDERAL HOME LOAN MORTGAGE
CORPORATION, a federally chartered corporation,
a.k.a. Freddie Mac,

Defendants-Appellees.

_____

No. 13-13267

_____

D.C. Docket No. 4:12-cv-00102-DHB-GRS

DANIEL W. MASSEY,
as Clerk of the Superior Court of

3

Chatham County, Georgia, individually, and
on behalf of all others similarly situated,

                                        Plaintiff-Appellant,

GABRIELLE SUMME,
as Clerk of the Kenton, County, Kentucky,

                                        Interested Party-Appellant,


                    versus


FEDERAL HOUSING FINANCE AGENCY,

                                        Intervenor-Appellee,

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a.k.a. Fannie Mae, FEDERAL HOME LOAN MORTGAGE
CORPORATION,

                                        Defendants-Appellees.


                    _____

                    No. 13-13897
                    _____

                    D.C. Docket No. 3:12-cv-00886-WKW-SRW


RANDOLPH COUNTY, a duly organized county of the
State of Alabama, on behalf of itself and all others
counties in the state of Alabama similarly situated,

                                        Plaintiff-Appellant,

                    versus


FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a federally chartered private corporation, FEDERAL
HOME LOAN MORTGAGE CORPORATION, a
federally chartered private corporation, FEDERAL
HOUSING FINANCE AGENCY, as conservator for Federal
National Mortgage Association and Federal Home Loan Mortgage

4

Corporation,

Defendants-Appellees.

_____

No. 13-14094
_____

D.C. Docket No. 1:13-cv-00056-TWT

FLOYD COUNTY, GEORGIA, a Political Subdivision
of the State of Georgia,

Plaintiff-Appellant,

versus

FEDERAL HOUSING FINANCE AGENCY, a Conservator for
Federal National Mortgage Association and Federal Home Loan
Mortgage Corporation, FEDERAL NATIONAL MORTGAGE
ASSOCIATION, a Federally Chartered Corporation,
FEDERAL HOME LOAN MORTGAGE CORPORATION,
a Federally Chartered Corporation,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Middle District of Florida, the Southern District of Georgia, the Middle
District of Alabama, the Middle District of Georgia, and the Northern District of
Georgia
_____

(January 16, 2015)

5

Before MARTIN and ANDERSON, Circuit Judges and MORENO,[*] District Judge.

MORENO, District Judge:

This consolidated appeal arises from six district court actions in this circuit. In each of the six cases, the district court ruled in favor of the Appellees, the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac"), and the Federal Housing Finance Agency (collectively referred to as the "federal entities"). Appellants' position in this appeal is that the state taxes normally imposed on real estate transfers apply when the federal entities transfer real property in their respective states. The federal entities have not paid the transfer taxes, citing their Congressional charter exemptions from "all taxation." These statutory exemptions contain an exception allowing states to impose real estate taxes on the federal entities, and Appellants contend their transfer taxes fall into that exception. Appellants also make the constitutional argument that even if the exemptions preclude the states from imposing the transfer taxes, the exemptions themselves are unconstitutional under the Commerce, Necessary and Proper and Supremacy Clauses. The district court

---

[*]Honorable Federico A. Moreno, United States District Judge for the Southern District of Florida, sitting by designation.

in each case, as have several Circuit Courts of Appeal,[1] found the federal entities are exempt from paying transfer taxes, and the statutes are otherwise constitutional. We agree and affirm.

## I.  Factual Background

*A.  The Federal Entities and the Statutory Charter Exemption from Taxation*

During the Great Depression, Congress created Fannie Mae to "establish secondary market facilities for residential mortgages," to "provide stability in the secondary market for residential mortgages," and to "promote access to mortgage credit throughout the Nation." 12 U.S.C. § 1716.  Later, Congress chartered Freddie Mac for substantially the same mission, including to provide ongoing assistance to the secondary market for residential mortgages, to strengthen and support mortgages on housing for low and moderate income families, by increasing the liquidity of the market, and to promote access to mortgage credit. *Id.* at § 1451 *et seq.*  These federally chartered entities purchase and securitize residential mortgages, which generates additional liquidity for mortgage lending.

---

[1]*See Bd. of County Comm'rs of Kay County, Okla. v. Fed. Housing Fin. Agency*, 754 F.3d 1025 (D.C. Cir. 2014); *Vadnais v. Fed. Nat'l Mortg. Ass'n*, 754 F.3d 524 (8th Cir. June 6, 2014); *Delaware County v. Fed. Housing Fin. Agency*, 747 F.3d 215 (3d Cir. 2014); *Hennepin County v. Fed. Nat'l Mortg. Ass'n*, 742 F.3d 818, 824 (8th Cir. 2014); *Montgomery County, Md. v. Fed. Nat'l Mortg. Ass'n*, 740 F.3d 914, 917 (4th Cir. 2014); *DeKalb County v. Fed. Housing Fin. Agency*, 741 F.3d 795, 800 (7th Cir. 2013); *County of Oakland v. Fed. Housing Fin. Agency*, 716 F.3d 935 (6th Cir. 2013); *Town of Johnston v. Fed. Housing Fin. Agency*, 765 F.3d 80 (1st Cir.

*See id*. at §§ 1452(c), 1454(a)(1), 1717(b)(1), 1719(d).  During the 2008 financial crisis, Congress created the Federal Housing Finance Agency to regulate Fannie Mae and Freddie Mac, among other entities. *Id*. at § 4511. The Federal Housing Finance Agency is an independent federal agency, created by the Housing and Economic Recovery Act of 2008.  *Id*. at §§ 4511, 4617 *et seq*.  In the wake of the 2008 financial crisis, Fannie Mae and Freddie Mac were placed into the Federal Housing Finance Agency's conservatorship.  *Id.* at § 4617.  As the conservator, the Federal Housing Finance Agency has the statutory power to "operate" Fannie Mae and Freddie Mac with the statutory mission of "preserv[ing] and conserv[ing] the[ir] assets and property." *Id*. at § 4617(b)(2)(B)(iv).   The Federal Housing Finance Agency, as conservator, has the authority to "transfer or sell any asset or liability of the regulated entity." *Id*. at § 4617(b)(2)(G).

Congress enacted statutory exemptions from taxation for all three entities. The statutes are as follows:

> *1.  Fannie Mae's Exemption at 12 U.S.C. § 1723a(c)(2)*
>
> [Fannie Mae], including its franchise, capital, reserves, surplus, mortgages, or other security holdings, and income shall be exempt from all taxation now or

2014); *City of Spokane v. Fed. Nat'l Mortg. Ass'n*, No. 13-35655, 2014 WL 7384311 (9th Cir. Dec. 30, 2014).

hereafter imposed by any State, . . . or by any county, . . . except that any real property of the corporation shall be subject to State. . .county. . . or local taxation to the same extent as other real property is taxed.

*2.  Freddie Mac's Exemption at 12 U.S.C. § 1452(e)*

[Freddie Mac], including its franchise, activities, capital, reserves, surplus, and income, shall be exempt from all taxation now or hereafter imposed . . . by any State [or] county, . . .except that any real property of the Corporation shall be subject to State. . .county, . . . or local taxation to the same extent according to its value as other real property is taxed.

*3.  The Federal Housing Finance Agency's Exemption at 12 U.S.C. § 4617(j)(2)*

[The Federal Housing Finance Agency], including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State [or] county, . . . except that any real property of the Agency shall be subject to State, . . .county, . . .or local taxation to the same extent according to its value as other real property is taxed. . .

*B.  The Transfer Taxes*

Alabama, Florida, and Georgia impose taxes upon the transfer of real property.  In Alabama, upon the presentation of any instrument for record, a mandatory real property transfer tax is owed by the grantor to the judge of probate based upon the actual purchase price or the actual value of the property.  *See* Ala. Code. §§ 40-22-1(d), 40-22-2.  Similarly, Georgia's transfer tax is imposed "on

9

each deed, instrument, or other writing" by which any property is transferred, so long as the consideration or value of the property conveyed exceeds $100. *See* Ga. Code Ann. § 48-6-1. Georgia's transfer tax is owed to the Clerk of the Superior Court in the county in which the real property is situated "prior to and as a prerequisite to the filing for record of any deed, instrument, or other writing" subject to the tax. *Id.* at § 48-6-4(a). Florida's transfer tax works in much the same way. Florida Statute § 201.02 states that a transfer tax of 70 cents shall apply on each $100 of consideration when there is a transfer of real property.

## C. The District Court Proceedings

The six cases consolidated in this appeal are as follows: *Montgomery County Commission v. Federal Housing Finance Agency*, App. No. 13-12615 (on appeal from the Middle District of Alabama); *Athens-Clarke County v. Federal Housing Finance Agency, et al.*, App. No. 13-12367 (on appeal from the Middle District of Georgia); *Doggett v. Federal Housing Finance Agency, et al.*, App. No. 13-13150 (on appeal from the Middle District of Florida) (Lee County); *Massey v. Federal Housing Finance Agency, et al.*, App. No. 13-13267 (on appeal from the Southern District of Georgia) (Chatham County); *Randolph County v. Federal Housing Finance Agency, et al.*, App. No. 13-13897 (on appeal from the Middle District of

Alabama); *Floyd County v. Federal Housing Finance Agency, et al.*, App. No. 13-14094 (on appeal from the Northern District of Georgia).

In the *Randolph County* action, the county filed a motion for summary judgment as to liability asserting that the charter exemptions from taxation were an unconstitutional interference with its right as a sovereign to impose non-discriminatory transfer taxes on Fannie Mae and Freddie Mac, and that in any event, the statute's own exception for real estate taxes applied to allow the local government to impose the tax. The federal entities also filed a motion for summary judgment and opposed Randolph County's motion. The district court granted the entities' motion finding that "Congress has the power to exempt Defendants statutorily" and that "[t]he Commerce Clause permits Congress to regulate activities that have a substantial relation to interstate commerce, and the availability of capital in the national mortgage market bears such a substantial relationship." *Randolph County v. Fed. Nat'l Mortg. Ass'n*, No. 3:12-CV-886-WKW, 2013 WL 3947614, *6 (M.D. Ala. July 31, 2013). The district court in the *Randolph County* case held the statutory exception that allows for taxation on real property did not apply to the Alabama transfer tax. *Id.*

Likewise, the Georgia district court's order dismissing the amended complaint in the *Athens-Clarke County* matter found that as federally chartered

11

private corporations, Fannie Mae, and Freddie Mac may be shielded from paying state taxes based on a congressional exemption. *Athens-Clarke County Unified Gov't v. Fed. Housing Fin. Agency*, 945 F. Supp. 2d 1401(M.D. Ga. 2013).   The district court reasoned that "[the county is] essentially ask[ing] the Court, based on broad principles of federalism and dual sovereignty, to read new limits into the Commerce Clause that would rein in Congressional authority to exempt private entities from state taxation. However, [the district court] while respecting these principles, decline[d] the Plaintiffs' expansive invitation to redraw the outer boundaries of Congress's commerce power." *Id.* at n.18.   The Georgia district court similarly held the statutory exception for taxation of real property did not apply to except the transfer tax from the scope of the entities' statutory exemption from taxation. *Id.*, 945 F. Supp. 2d at 1410.

The other four actions that are part of this consolidated appeal met the same disposition in their respective district courts.  The Alabama district court entered judgment in favor of the federal entities in the *Montgomery County* action. *Montgomery County Comm'n v. Fed. Housing Fin. Agency*, No. 2:12-CV-885, 2013 WL1896256 (M.D. Ala. 2013). In the *Lee County* action, the Florida district court dismissed the complaint. (App. to Brief of Plaintiff-Appellant Linda Doggett at 329).  The Georgia district court also dismissed the *Chatham County* action and

12

entered judgment in favor of the federal entities in the *Floyd County* action. (Record in Chatham County Action at 82); *Floyd County v. Fed. Housing Fin. Agency*, No. 1:13-CV-56-TWT, 2013 WL 4670668 (N.D. Ga. Aug. 30, 2013).

## II. Standard of Review

This Court reviews questions of statutory interpretation *de novo*. *See Black Warrior Riverkeeper, Inc. v. Black Warrior Minerals, Inc.*, 734 F.3d 1297, 1300 (11th Cir. 2013). This Court reviews a district court's grant or denial of a motion for summary judgment, as in the *Randolph County* action *de novo. Swanson v. Worley*, 490 F.3d 894, n.8 (11th Cir. 2007). Accepting all of the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff, the standard of review on the grant of a 12(b)(6) motion to dismiss, as in the *Athens-Clarke* action, is also *de novo*. *Simmons v. Sonyika*, 394 F.3d 1335, 1338 (11th Cir. 2004).

## III.  Analysis

This consolidated appeal arises out of six actions in five United States District Courts in this Circuit. The appeal arises out of a Congressional exemption from taxation granted to the federal entities. The six district court opinions found

13

the statutory exemptions[2] do apply to preclude taxation and are constitutional. Additionally, the district courts found the statutory exceptions for taxation of real property contained in the federal statutes did not apply to allow Appellants to impose the transfer taxes. We affirm the district courts and agree with our sister Circuit Courts, who have held the charter exemptions do apply in this context, and are constitutional. *See Bd. of County Comm'rs of Kay County, Okla. v. Fed. Housing Fin. Agency*, 754 F.3d 1025 (D.C. Cir. 2014); *Vadnais v. Fed. Nat'l Mortg. Ass'n*, 754 F.3d 524 (8th Cir. June 6, 2014); *Delaware County v. Fed. Housing Fin. Agency*, 747 F.3d 215 (3d Cir. 2014); *Hennepin County v. Fed. Nat'l Mortg. Ass'n*, 742 F.3d 818, 824 (8th Cir. 2014); *Montgomery County, Md. v. Fed. Nat'l Mortg. Ass'n*, 740 F.3d 914, 917 (4th Cir. 2014); *DeKalb County v. Fed. Housing Fin. Agency*, 741 F.3d 795, 800 (7th Cir. 2013); *County of Oakland v. Fed. Housing Fin. Agency*, 716 F.3d 935 (6th Cir. 2013); *Town of Johnston v. Fed.*

---

[2] The statutory provisions exempt the federal entities from "all [state and local] taxation," except taxes to which their real property is   subject. 12 U.S.C. §§ 1452(e), 1723a(c)(2), 4617(j)(2) (i.e. the exemption provisions).

*Housing Fin. Agency*, 765 F.3d 80 (1st Cir. 2014); *City of Spokane v. Fed. Nat'l Mortg. Ass'n*, No. 13-35655, 2014 WL 7384311 (9th Cir. Dec. 30, 2014).[3]

    A. *Do the Statutory Exemptions Prohibit the States from Charging Transfer Taxes?*

"It is well settled that 'the starting point for interpreting a statute is the language of the statute itself.'" *Gwaltney of Smithfield, Ltd. v. Chesapeake*, 484 U.S. 49, 57 (1987) (*Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)). "When [a] statute's language is plain, the sole function of the courts. . . is to enforce it according to its terms." *Dodd v. United States*, 545 U.S. 353, 359 (2005) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6, (2000)). The federal charters state that they "shall be exempt from all taxation . . . imposed by any State." 12 U.S.C. §§ 1723a(c)(2); 1452(e); 4617(j)(2). These statutes proceed to identify real property as the sole exception to the general rule. *Id.* A straightforward interpretation of the provisions is that the federal agencies are exempt from *all* state taxation, other than taxes on

---

[3]In addition to those cases analyzed by the various Circuit Courts, several district courts have also reviewed the issues and found in favor of the Fannie Mae, Freddie Mac, and the Federal Housing Finance Agency. *See City of Bridgeport v. Fed. Nat'l. Mortg. Ass'n*, No. 3:12-cv-1218, 2014 WL 1612589 (D. Conn. April 22, 2014); *County of Erie v. Fed. Housing Fin. Agency*, No. 13-CV-284S, 2014 WL 795967 (W.D.N.Y. Feb. 27, 2014); *Griffith v. Fed. Nat'l. Mortg. Ass'n*, No. 12-02083, 2014 WL 2573329 (S.D.W. Va. June 9, 2014); *Butts v. Fed. Nat'l Mortg. Ass'n*, No. 9:12-1912 (D.S.C. May 23, 2013).

their own real estate holdings. *See Kay County*, 754 F.3d at 1029 ("all taxation clearly encompasses *all* taxation, including the Transfer Tax").

Against this argument, Montgomery and Floyd Counties argue the district court erred in holding that all taxation prohibited the imposition of the transfer taxes. Rather, Montgomery and Floyd Counties cite *United States v. Wells Fargo*, 485 U.S. 351 (1988), where the Supreme Court stated:

> [A]n exemption of property from all taxation ha[s] an understood meaning: the property [is] exempt from *direct* taxation, but certain privileges of ownership, such as the right to transfer the property, [can] be taxed. Underlying this doctrine is the distinction between an excise tax, which is levied upon the use or transfer of property even though it might be measured by the property's value, and a tax levied upon the property itself.

*Id.*, 485 U.S. at 355. Using this language, the counties argue that an exemption from "all taxation" has a technical, "understood meaning" that does not provide an exemption from *indirect* taxes such as transfer taxes. *Id.*

16

As the Seventh Circuit explained in *DeKalb County*, 741 F.3d at 800, the flaw in the counties' argument is that *Wells Fargo* involved an exemption of specific property from all taxation, whereas this case involves exemptions of entities. The Supreme Court in *Wells Fargo* was considering an estate tax, an excise tax on the transfer of property at death, and the transfer of Project Notes[4] in particular, which it held could be taxed at transfer. *DeKalb*, 741 F.3d at 800; *Delaware County*, 747 F.3d at 222 (3d Cir. 2014).

In *DeKalb*, the court found *Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95 (1941) to be more squarely on point and this Court agrees. "Had the Supreme Court meant to hold that the term 'all taxation' means just property taxation – a very strange reading, equivalent to interpreting 'all soup' to mean 'all lobster bisque' – it would have had to overrule [*Bismarck*]." *DeKalb*, 741 F.3d at 800. In *Bismarck*, the Supreme Court analyzed a statute that stated "every Federal land bank . . . shall be exempt from Federal, State, municipal, and local taxation, except taxes upon real estate held, purchased or taken." *Bismarck*, 314 U.S. at 96

---

[4]The Housing Act of 1937 gave state and local housing authorities the power to issue tax-free financing instruments, termed "Project Notes." These notes were property issued by the state and local housing authorities during the housing shortage of the 1930s. *Wells Fargo*, 485 U.S. at 353.

17

n.1.  The tax exemption here applies to the federal entities, like the federal land banks in *Bismarck*, and "not just its property, which was the issue in *Wells Fargo*."  *DeKalb*, 741 F.3d at 801 ("The important point is that, as is plain from reading *Wells Fargo*, and plainer still when it is read in conjunction with *Bismarck*, the Fannie Mae statute exempts Fannie from real estate transfer taxes levied by state or local government. . ."); *Delaware County*, 747 F.3d at 222 ("*Wells Fargo* involved an exemption of specific property from all taxation, whereas this case involves exemptions of entities"); *Kay County*, 754 F.3d at 1029 ("But that case [*Wells Fargo*] is not on point.  The statute at issue in *Wells Fargo* exempted specific property.  The statute at issue in this case exempts specific entities. This is a distinction with a difference."); *Hennepin County*, 742 F.3d at 822 (holding the issue was akin to that in *Bismarck*, and distinguishing *Wells Fargo*); *County of Oakland*, 716 F.3d at 94-41 (finding *Bismarck* applies).

Bismarck* is not the only Supreme Court case on point to support the holding that the exemption encompasses transfer taxes.  In *Pittman v. Home Owners' Loan Corp. of Washington, DC*, 308 U.S. 21, 33 (1939), the Supreme Court held that a federal statutory exemption from "all taxation" granted to the Home Owners' Loan Corporation prohibited a Maryland stamp tax upon the recording of mortgages.  The Supreme Court consistently held in *Laurens Fed.*

18

*Savs. & Loan Ass'n v. S.C. Tax Comm'n*, 365 U.S. 517, 524 (1961) that a federal statutory exemption from "all taxation" granted to federal home loan banks prohibited South Carolina from collecting a similar stamp tax imposed on transfers to or from such banks.  Based on the Supreme Court precedent, the Court agrees with our sister Circuit Courts that the statutory exemption from "all taxation" applies to excise taxes like the transfer taxes here.

### 1.  The Real Estate Exceptions

The federal charter exemptions each contain an exception that states that "any real property" of the entities "shall be subject to [state and local] taxation to the same extent . . . as other real property is taxed."   12 U.S.C. §§ 1452(e), 1723a(c)(2), 4617(j)(2).  Appellants argue that the district courts erred in limiting the real estate exception to *ad valorem* taxes.  Their position is that "taxation is the rule -- exemption is the exception" and thus, the real estate property exception should be broadly construed to include an exception for transfer taxes, in addition to *ad valorem* taxes.  *Yazoo & M.V.R. Co. v. Thomas*, 132 U.S. 174 (1889).  More specifically, Appellants argue that property ownership is a "bundle of sticks" and the right to transfer is one stick in the property tax bundle. Taking the argument one step further, Appellants argue that any privilege associated with property ownership is tantamount to a real property tax, falling within the statutes'

19

exception. Our sister Circuit Courts to have reviewed this argument have disagreed with Appellants' position. Here is why. Although transfer taxes are imposed on the exercise of privileges stemming from the ownership of real property, they are not taxes on the property itself, and thus do not qualify for the real property exception. To put it another way, "A deed is not real estate, any more than car title is a car." *DeKalb*, 741 F.3d at 801; *see Hennepin County*, 742 F.3d at 822 ("deed transfer tax is a tax imposed by the state on the transfer of real property, not on the real property itself."); *Kay County*, 754 F.3d at 1030 ("The Transfer Tax, which is measured by the value of the property but triggered only at its transfer, is clearly an excise tax. *Wells Fargo*, upon which the County relies establishes the difference: excise taxes . . . are levied upon [the property's] use or transfer and not upon its existence."); *Town of Johnston*, 765 F.3d at 83 ("[T]his distinction between direct taxes on real property and indirect taxes is reflected in both Massachusetts and Rhode Island law. Direct taxes on real property. . .are codified separately from transfer taxes. . ."); *City of Spokane*, 2014 WL 7384311, at *2 ("[I]t is clear that the statutory carve-outs allowing for the taxation of real property as 'other real property is taxed' encompass only property taxes, not excise taxes."); *Delaware County*, 747 F.3d at 224; *Montgomery County*, 740 F.3d

20

at 920; *County of Oakland v. Fed. Housing Fin. Agency*, 716 F.3d 935, 939 n.6 (6th Cir. 2013).

Moreover, "[w]hen Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference . . . is that Congress considered the issue of exceptions, and, in the end, limited the statute to the ones set forth." *County of Oakland*, 716 F.3d at 940 (quoting *United States v. Johnson*, 529 U.S. 53, 58 (2000)). Here, the Court declines to extend the exception for taxation "as other real property is taxed" to include the states' transfer taxes.

*B. Are the Statutory Exemptions Constitutional under the Commerce Clause?*

Appellants next make an interesting constitutional argument to invalidate the statutory tax exemptions. At issue is whether Congress acted within its authority under the Commerce Clause and Necessary and Proper Clauses, whether the entities are federal instrumentalities or private mortgage lenders, and whether the Tenth Amendment precludes the statutory exemptions.

*1. Did Congress violate the Commerce and Necessary and Proper Clauses?*

21

The Commerce Clause provides that Congress shall have the power "to regulate Commerce with foreign Nations, and among the Several States. . .." U.S. Const. Art. I, § 8 cl. 3.  To that end, the "Necessary and Proper Clause grants Congress broad authority to enact federal legislation." *United States v. Comstock*, 560 U.S. 126, 133 (2010).  It gives Congress the authority to "make all Laws which shall be necessary and proper" to "regulate Commerce . . . among the several States."  U.S. Const., Art. I, § 8. Typically, when a federal statute is construed to invalidate a state tax, courts apply the rational basis test to determine whether Congress had a "rational basis for finding the . . .tax interfered with interstate commerce." *Ariz. Pub. Serv. Co. v. Snead*, 441 U.S. 141, 150 (1979); *Gonzales v. Raich*, 545 U.S. 1, 22 (2005); *Vadnais v. Fed. Nat'l Mortg.*, 754 F.3d 524, 527 (8th Cir. 2014).

Appellants contend this Court should review Congress's authority to exempt the federal entities under the strict scrutiny standard of review because the exemptions interfere with the States' fundamental constitutional rights as separate sovereigns under the Tenth Amendment.  However, under *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 276 (1981) "[t]he task of a court that is asked to determine whether a particular exercise of congressional power is valid under the Commerce Clause is relatively narrow.  The court must defer to a

22

congressional finding that a regulated activity affects interstate commerce, if there is any rational basis for such a finding." *see also Montgomery County*, 740 F.3d at 921 ("The Supreme Court has often recognized Congress's power to exempt entities from state taxation, but it has never indicated that such an exercise of power would be subject to strict scrutiny."); *Town of Johnston*, 765 F.3d at 84 ("As the municipalities necessarily concede, there is no precedent in favor of this wishful argument. . .The district courts saw no reason to depart from a rational basis analysis, and neither do we."). Accordingly, in the absence of a particular constitutional right that triggers strict scrutiny, the Court will evaluate the federal charter exemptions under a rational basis standard of review.

On the merits, the Appellants contend that Congress overstepped its authority under the Commerce Clause because the transfer taxes are local *intra*state activity. The Commerce Clause authorizes Congress to regulate "the channels of interstate commerce, persons or things in interstate commerce, and those activities that substantially affect interstate commerce." *Nat. Fed'n of Indep. Bus. v. Sebelius*, – U.S.–, 132 S. Ct. 2566, 2578 (2012) (quoting *United States v. Morrison*, 529 U.S. 598, 609 (2000)). Without question, the Supreme Court has "firmly establishe[d] Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on

23

interstate commerce." *Raich*, 545 U.S. at 1, 17 (citing *Perez v. United States,* 402 U.S. 146, 150 (1971)). Evaluating a statute's validity requires this Court to determine only whether Congress had a rational basis for determining the regulated activity substantially affects interstate commerce. *Id.* (citing *United States v. Lopez*, 514 U.S. 549 (1995)); *Hodel*, 452 U.S. at 276-80.

Congress created the federal entities – Fannie Mae, Freddie Mac, and the Federal Housing Finance Agency – with the intention of stabilizing the secondary market in home mortgages and to increase the supply of mortgage lending capital. *See* 12 U.S.C. § 1716 (Fannie Mae); 12 U.S.C. § 1451 (Freddie Mac). Congress charged these entitites "with buying mortgages from banks that had made mortgage loans, thus pumping money into the banking industry that could be used to make more such loans." *DeKalb*, 741 F.3d at 797. For this reason, all the Circuit Courts to have reviewed this issue have found that Congress rationally acted in exempting the federal entities from the burden of state and local taxation, allowing them to reduce transaction costs in the course of buying and selling mortgages. *Delaware County*, 747 F.3d at 227 ("It strains credulity to argue that the transfer taxes, aggregated nationally, do not substantially affect the [national mortgage market]."); *DeKalb*, 741 F.3d at 801 ("[I]t is obvious that the home mortgage market is nationwide, and indeed worldwide, with home mortgages

24

being traded in vast quantities across state lines."); *Montgomery County*, 740 F.3d at 923 ("One need only recall the effects on the national economy that the 2008 failure of mortgage markets had in order to recognize that the regulation and stabilization of those markets lie at the core of the Nation's interest in promoting and maintaining a vital economy."); *Vadnais*, 754 F.3d at 527 ("This belief could lead Congress to reasonably conclude state transfer taxes 'would substantially affect interstate commerce by burdening' the federal agencies.") (quoting *Montgomery County*, 740 F.3d at 924); *Town of Johnston*, 765 F.3d at 85 ("If the mission of the entities as detailed in their charters is not at the heart of interstate commerce, it surely resides in one of the main arteries."); *City of Spokane*, 2014 WL 7384311, at *4 ("[Congress] has power under the Necessary and Proper Clause not only to create Fannie and Freddie but also to ensure their preservation by exempting them from state and local taxes."). This Court agrees that Congress did not overstep its authority under the Commerce Clause in exempting the federal entities from the states' transfer taxes and the exemptions were a valid exercise under the Necessary and Proper Clause.

### 2.  *Are the Appellees federal instrumentalities?*

Appellants do not dispute that Congress can exempt federal agencies from a state tax, but rather argue the Fannie Mae and Freddie Mac are privately-held

25

corporations and not federal instrumentalities. *See McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436-37 (1819) (holding a state or local government cannot tax a federal entity).[5]  Recognizing that *McCulloch* controls, Appellants contend the constitutional immunity granted by *McCulloch* and the statutory exemptions must be identical for a private entity to be exempt. The Seventh Circuit has held that whether the constitutional and statutory exemptions are identical is inconsequential. *DeKalb*, 741 F.3d at 802.  This Court agrees that requiring the constitutional and statutory exemption to be identical would strip Congress's power under the Commerce Clause.  *Id.*, 741 F.3d at 802 (quoting *Ariz. Dep't of Revenue v. Blaze Constr. Co.*, 526 U.S. 32, 35-36).

Against this logic, Appellants urge this Court to find the privatization of Fannie Mae and Freddie Mac precludes Congress from exempting them from state taxation. Appellants argue the district courts improperly relied on the decision in *First Agricultural Nat'l Bank v. State Tax Comm'n*, 392 U.S. 339 (1968).  In *First Agricultural*, the Supreme Court held that a national bank had been statutorily exempted from a state tax, which made it "unnecessary to reach the constitutional question of whether . . .national banks should be considered nontaxable as federal

---

[5]Fannie Mae was converted into a private entity by Congress, but its charter remained unchanged.  Fannie Mae cannot change its charter, unless Congress does so statutorily.  12

26

instrumentalities." *Id.*, 392 U.S. at 341.  The Supreme Court added that "[b]ecause of pertinent congressional legislation in the banking field, we find it unnecessary to reach the constitutional question. . .." *Id.*  Likewise here, Congress had the authority to provide for "immunity from state taxation irrespective of [the] entity's status as a federal instrumentality and because Congress has done so in the present case, it is unnecessary to address whether Fannie Mae and Freddie Mac indeed qualify as federal instrumentalities." *Montgomery County*, 740 F.3d at 925; *see also Blaze Constr. Co., Inc.*, 526 U.S. at 36-38 (stating that tax exemption could stem from constitutional immunity or congressional exemption); *Delaware County*, 747 F.3d at 228, n.4.  Put another way, "[t]his focus on whether the entities are federal instrumentalities is off-target.  Private entities may be shielded from paying a state tax by either 'constitutional immunity or congressional exemption.'" *Town of Johnston*, 765 F.3d at 85 (quoting *Blaze Constr. Co., Inc.*, 526 U.S. at 36-38).  Again, it simply does not matter whether Fannie Mae and Freddie Mac were privatized, as long as they are fulfilling a federal policy found in their charters.  Because that is the case, the Court must honor the Congressional exemption.  *DeKalb*,741 F.3d at 802 ("Congress's purpose in creating Fannie in the first place – to expand home-mortgage lending in the United States – remains

---

U.S.C. § 1716.  Freddie Mac was always private, but its charter like that of Fannie Mae's, is to

federal policy, and therefore remains the policy that private Fannie is obligated as its sole mission, to promote. . ..  The objective was governmental and unchanged; only the means of achieving it was changed.").

*Bismarck* also lends support for this position.  In *Bismarck*, the Supreme Court held that "when Congress constitutionally creates a corporation through which the federal government lawfully acts, the activities of such corporations are governmental."  *Id.*, 314 U.S. at 102; *see also Pittman*, 308 U.S. at 32 ("[T]he activities of the Corporation through which the national government lawfully acts must be regarded as governmental functions and as entitled to whatever immunity attaches to those functions when performed by the government itself.").  The *Bismarck* Court ultimately held that Congress had the power to exempt from taxation the federal land banks, which it viewed as extensions of the federal government. *Bismarck*, 314 U.S. at 102.  This case is nearly identical to *Bismarck*. *Hennepin County*, 742 F.3d at 823.  Congress constitutionally created Fannie Mae and Freddie Mac to provide access to mortgages and support to the secondary mortgage market.  Like the federal land banks, Congress had the authority to exempt them from state taxation as these entities are carrying out a federal policy that their charters require them to pursue.  This Court therefore agrees with the

---

promote federal home financing policy.  12 U.S.C. § 1451.

sister Circuit Courts to have reviewed this issue that Congress has the authority to protect these federal entities by exempting from state taxation. *DeKalb*, 741 F.3d at 802; *Hennepin County*, 742 F.3d at 824; *Montgomery County*, 740 F.3d at 925; *Vadnais*, 754 F.3d at 527.

### 3. *Do the exemptions run afoul of the 10th Amendment?*

Relying on *New York v. United States*, 505 U.S. 144 (1992) and *Printz v. United States*, 521 U.S. 898 (1997), Appellants argue the federal charter exemptions run afoul of the 10th Amendment by commandeering state officials to record deeds from the federal entities free of charge. *New York* and *Printz* explain the general "anti-commandeering" parameters of the Tenth Amendment: (i) Congress may not require a state legislature to enact any laws or regulations and (ii) Congress may not command state officers to administer or enforce a federal regulatory program. *New York*, 505 U.S. at 162-170; *Printz*, 521 U.S. at 935. This Court does not view the exemptions at issue to require the state legislature or the state officers to take any action to implement a federal program. Rather, the Court views the exemptions as valid under the Supremacy Clause, which allows Congress to properly enact statutes under the Commerce Clause, which supercede state tax law.

The statutory exemptions are in line with those upheld by the Supreme Court in *South Carolina v. Baker*, 485 U.S. 505 (1988), in which the Court found a federal statute requiring bond registration did not improperly commandeer the states. In *Baker*, the Supreme Court wrote: "Any federal regulation demands compliance. That a State wishing to engage in certain activity must take administrative and sometimes legislative action to comply with federal standards regulating that activity is a commonplace [and] presents no constitutional defect." *Id.*, 485 U.S. at 514; *see also Reno v. Condon*, 528 U.S. 141, 151 (2000). The federal charter exemptions at issue in this case certainly do not improperly commandeer the state actors in violation of the 10th Amendment.

In this case, the Supremacy Clause does not set forth a different standard for legislation enacted under the Commerce Clause, including any legislation such as the state taxes here at issue. This Court also recognizes the Supreme Court has required Congress to "speak clearly when it intends to exercise its lawful authority under the Supremacy Clause to preempt traditional state powers" such as taxation. *Delaware County*, 747 F.3d at 225 (citing *Dep't of Rev. of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 345 (1994)) ("We will interpret a statute to pre-empt the traditional state powers only if that result is 'the clear and manifest purpose of Congress.'"). Indeed, the Supreme Court has long held that the federal commerce power

30

supercedes state tax authority. *Brown v. Maryland*, 25 U.S. (12 Wheat.) 419 (1827); *see also Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1 (1824) ("[The Commerce Clause] is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution."). In evaluating this issue, the Seventh Circuit explained, "[n]o provision of the Constitution insulates state taxes from federal powers granted by the Constitution." *DeKalb*, 741 F.3d at 801; *see Delaware County*, 747 F.3d at 228 ("A state official's compliance with federal law and non-enforcement of a preempted state law– as required by the Supremacy Clause– is not an unconstitutional commandeering."); *Montgomery County*, 740 F.3d at 925 ("The federal statutes in question, however, do not impose upon the states or local officers any affirmative obligation."); *City of Spokane*, 2014 WL 7384311, at *4 ("The exemptions neither commandeer state and local officials nor transgress general principles of federalism."). This Court agrees that the Congressional exemptions here demonstrate a clear intention by Congress to exercise its lawful authority under the Supremacy Clause to prohibit the imposition of state taxes on the federal entities.

31

The district courts' decisions holding that the federal entities are exempt from paying transfer taxes and that the federal statutes are constitutional are affirmed.

AFFIRMED.