SHEPHERD, Circuit Judge,
concurring.
I concur in the court’s opinion today, but I write separately to present an alternative ground for reversal. In my view, even if § 23(A) provides a substantive right that the plaintiffs can enforce through a § 1983 suit, the right provided is to a range of qualified providers—not the right to a particular provider the State has decertified. For this alternative reason, the plaintiffs’ § 1983 claim fails.
Assuming that § 23(A) grants the plaintiffs a private right of action, we must examine the precise contours of that right. Cf. Gonzaga Univ. v. Doe, 536 U.S. 273, 280, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) (requiring that conferred benefits be sufficiently specific and definite to qualify as enforceable rights). The plaintiffs frame the right as an absolute right to use the qualified provider of their own choosing without governmental interference. Because Arkansas decertified Planned Parenthood—plaintiffs’ preferred healthcare provider—as a qualified provider, the plaintiffs allege they have a right under § 23(A) to challenge that decertification.
But the Supreme Court’s decision in O’Bannon v. Town Court Nursing Center, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), tells us the right created by § 23(A) is far more narrow: the right to choose among a range of qualified provid *1047 ers. O’Bannon involved Medicaid recipients residing in a nursing home that initially qualified as a Medicaid provider. Id. at 775, 100 S.Ct. 2467. After the nursing home was decertified and removed from the list of qualified providers, residents brought suit, alleging a constitutional right to an evidentiary hearing on the merits of the decertification decision. The Supreme Court rejected this argument. Analyzing the “substantive right” provided by § 23(A), the Court held that “the Medicaid provisions ... do not confer a right to continued residence in the home of one’s choice.” Id. at 785-86, 100 S.Ct. 2467. Section 23(A), the Court explained, “gives recipients the right to choose among a range of qualified providers, without government interference.” Id. at 785, 100 S.Ct. 2467. So long as the provider remains qualified, therefore, Medicaid recipients remain free to stay there. But § 23(A) “clearly does not ... confer a right on a recipient to continue to receive benefits for care in a home that has been decertified.” Id. In sum, the Court carefully delineated the limits of the right conferred by § 23(A); there is no enforceable right of continued care from a provider determined by the state to be unqualified.
I see two important takeaways from O’Bannon. First, the contours of the right granted by § 23(A) are circumscribed. Medicaid recipients have the enforceable right to a range of qualified providers. So state agencies cannot steer patients to certain qualified providers at the expense of other qualified providers. Nor can an agency artificially create a monopoly in Medicaid care.[8] But there exists no right to a particular provider the State has decertified. Second, § 23(A) does not give Medicaid recipients the right “to challenge the merits of a State’s assertion that a provider of Medicaid services is no longer qualified to provide Medicaid services or to challenge the State’s termination of a provider’s Medicaid agreements on the basis of the provider’s noncompliance with state and federal regulatory requirements.” Planned Parenthood of Gulf Coast, Inc. v. Gee, 862 F.3d 445, 473 (5th Cir.2017) (Owen, J., dissenting). The O’Bánnon Court explained that “decertification does not reduce or terminate a patient’s financial assistance, but merely requires him to use it for care at a different facility.” 447 U.S. at 785-86, 100 S.Ct. 2467. “Because the patients had no substantive right to demand care from a provider that had been decertified, they had no due process rights to participate in a hearing regarding certification or decertification of the provider.” Gee, 862 F.3d at 475 (Owen, J., dissenting).
O’Bannon controls the outcome of this case. The plaintiffs are asserting a right— the absolute right to a particular provider of their choosing—that § 23(A) does not grant them. The rights granted to these plaintiffs under the statute, as explained by O’Bannon, remain intact because the record confirms that they still have access to a range of qualified providers. Further, the plaintiffs have no right under federal law to collaterally attack the merits of Arkansas’s decision to decertify Planned Parenthood. Planned Parenthood had the right to challenge that decision, but instead elected not to do so.
*1048 The plaintiffs argue on appeal that O’Bannon concerned “only a procedural due process claim,” and therefore we should not consider it controlling because the plaintiffs in this case assert a violation of a substantive right. To be sure, some of our fellow circuit courts have agreed with this view. See Gee, 862 F.3d at 459-60 (distinguishing O’Bannon because it involved procedural due process rights and not substantive rights); Planned Parenthood of Ind., Inc. v. Comm’r of Ind. State Dep’t of Health, 699 F.3d 962, 977 (7th Cir. 2012) (same).
This ’view, however, is patently flawed because it ignores the very language of O’Bannon. The Supreme Court clearly stated that it was defining the contours of the “substantive right ... conferred by the statutes and regulations,” O’Bannon, 447 U.S. at 786, 100 S.Ct. 2467. We, as courts of appeals, have no authority to dismiss binding precedent from the highest court in the land, especially when that precedent is on point. See Hennepin Cnty. v. Fed. Nat’l Mortg. Ass’n, 742 F.3d 818, 823 (8th Cir. 2014) (“Lower courts must follow Supreme Court precedent which directly applies to a case before them.... ”).
The plaintiffs’ argument also exhibits a fundamental misunderstanding of due process rights. Any right to due process, whether asserted as a procedural or substantive claim, exists only when there is an underlying substantive right at issue. See Gee, 862 F.3d at 475 (Owen, J., dissenting) (“[T]here is no right to due process unless there is a substantive right that may be vindicated if adequate process is accorded.”). The O’Bannon plaintiffs’ procedural due process claim required a showing that the State had deprived them of “life, liberty, or property.” See U.S. Const. amend. XIV. They identified § 23(A) as the source of their due process rights. See O’Bannon, 447 U.S. at 784-85, 100 S.Ct. 2467 (discussing § 23(A) as one of two sources identified by the plaintiffs as providing a substantive right). The Supreme Court thus examined whether § 23(A) provides Medicaid recipients the right to receive healthcare services from a particular provider the State has decertified. The Court concluded that no such right exists. Id. at 785-86, 100 S.Ct. 2467. On this basis—the lack of a substantive right to a particular, decertified provider—the Court denied the plaintiffs’ procedural due process claim. Id, The O’Bannon Court’s reasoning and decision apply with equal force to the plaintiffs’ present claim, and for this alternative reason I would reverse the district court.
The dissent contends that I misunderstand the plaintiffs’ argument. It then explains that the plaintiffs are not claiming that § 23(A) entitles them to choose a provider rightfully disqualified from the pool of Medicaid providers, but rather they argue that Arkansas’s decertification of Planned Parenthood as a qualified provider constitutes government Interference with their freedom of choice. O’Bannon, therefore, is supposedly inapposite. See Gee, 862 F.3d at 461 (“[T]he [O’Bannon] plaintiffs had no right to reside in an unqualified facility when the disqualification decision was connected to the - state’s enforcement of its health and safety regulations.”).
The dissent’s attempt to distinguish O’Bannon fails because it assumes that Planned Parenthood was somehow wrongfully disqualified as a Medicaid provider. The dissent claims to find proof of this wrongful termination in the fact that Planned Parenthood remains licensed to serve other patients. So according to the dissent, a Medicaid recipient has the right to challenge the merits of a provider’s decertification when the State permits that provider to continue providing, care to other patients. But this interpretation is plain *1049 ly wrong. “Under federal statutory and regulatory provisions, a State may terminate a provider’s Medicaid agreement on many grounds, and it is not a- prerequisite for such terminations that the State preclude a provider from providing services to any and. all patients.” Gee, 862 F.3d at 477 (Owen, J., dissenting); see also 42 U.S.C. § 1396a(p)(1) (“In addition to any other authority, a State may exclude any individual or entity for purposes of participating under the State plan under this subchapter for any reason for which the Secretary could exclude the indiyidual or entity from participation in a program under subchapter XVII of this chapter under section 1320a-7, 1320a-7a, or 1395cc(b)(2) of this title.”). And O’Bannon’s holding did not rest on whether the State allowed the nursing home to continue servicing other patients. The Court based its decision on the State’s termination of the nursing home’s Medicare provider agreement. O’Bannon, 447 U.S. at 776, 100 S.Ct. 2467. So O’Bannon remains controlling over this case.

. For these reasons, the dissent’s complaint about my construction of the right granted by § 23(A)— that it would be “self-eviscerating”—is unfounded. Section 23(A) protects Medicaid recipients from government interference in their choice of a qualified provider, examples of which I have described in the text above. Were the State to so interfere, the plaintiffs would have the right to challenge the State’s actions. So the right granted by § 23(A) is real and meaningful. It simply doesn’t have the meaning the dissent wishes it to have.