# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued May 12, 2014            Decided June 13, 2014

No. 13-7114

BOARD OF COUNTY COMMISSIONERS OF KAY COUNTY,
OKLAHOMA,
APPELLANT

v.

FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR
FEDERAL NATIONAL MORTGAGE ASSOCIATION AND
FEDERAL HOME LOAN MORTGAGE CORPORATION,
ET AL.,
APPELLEES

UNITED STATES OF AMERICA,
INTERVENOR

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01283)

———

*Warren T. Burns* argued the cause for appellant. With him on the briefs was *Terrell W. Oxford*. *Jonathan W. Cuneo* and *Larry D. Lahman* entered appearances.

*Michael A.F. Johnson* argued the cause for appellees. With him on the brief were *Howard N. Cayne*, *Dirk C. Phillips*, *Michael J. Ciatti*, *Merritt E. McAlister*, *Michael D. Leffel*, and *Jill L. Nicholson*.

*Tamara W. Ashford*, Principal Deputy Assistant Attorney General, U.S. Department of Justice, *Gilbert S. Rothenberg*, *Jonathan S. Cohen*, and *Patrick J. Urda*, Attorneys, were on the brief for intervenor United States of America in support of appellees.

Before: HENDERSON and MILLETT, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: The Board of County Commissioners of Kay County appeals the district court's dismissal of its complaint seeking a declaratory judgment that the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac), along with the Federal Housing Finance Agency (FHFA) as their conservator, violated state law by failing to pay Oklahoma's documentary stamp tax (the "Transfer Tax"). The district court held that all of the entities were exempt from the tax pursuant to their statutory charters, 12 U.S.C. §§ 1452(e), 1723a(c)(2), 4617(j)(1)-(2). We affirm the district court. We hold that the statutes exempt the entities from all state and local taxation, including Oklahoma's Transfer Tax, and that the Transfer Tax does not constitute a tax on real property such that it falls into the real property exceptions from the exemptions. Finally, we hold that Kay County has forfeited its argument that the exemptions represent an invalid exercise of the Commerce power.

**BACKGROUND**

Fannie Mae and Freddie Mac are federally-chartered, privately-owned entities currently under the conservatorship of the FHFA. Pursuant to 12 U.S.C. §§ 1452(e), 1723a(c)(2), and 4617(j)(1)-(2), each of these entities is "exempt from all taxation . . . imposed by any State [or] county . . . except that any real property of the [corporation or Agency is] subject to [such taxation] to the same extent . . . as other real property . . . ." Oklahoma imposes a documentary stamp tax on sales of real property. 68 Okla. Stat. Ann. § 3201. The tax is known as a "Transfer Tax," and is measured by the value of the property conveyed. *Id.* It attaches at the time a deed is executed and delivered to a buyer, and must be paid by the seller before the deed will be accepted for recording. *Id.* §§ 3203-04.

Kay County filed against Fannie Mae, Freddie Mac, and the FHFA (the "Entities"), seeking a declaratory judgment that they were not exempt from the Transfer Tax, along with damages in the amount of Transfer Taxes purportedly due and owing by the Entities. The complaint alleged that the Entities "wrongfully refused to pay" the tax when conveying property in the state, thereby depriving Kay County of tax revenue to which it is entitled. The Entities moved to dismiss, and the district court granted the motion. In so doing, the court joined an array of other federal courts interpreting "all taxation" to mean what it says and rejected Kay County's assertion that the phrase is actually a term of art referring only to direct taxation. *Bd. of Cnty. Comm'rs of Kay County v. FHFA*, 956 F. Supp. 2d 184, 187-90 (D.D.C. 2013). Highlighting the distinction between tax exemptions granted to *property* and those granted to *entities*, the court applied *Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95 (1941), which stands for the principle that unqualified exemptions

extended to entities reach all taxes ultimately borne by the entity—including excise taxes like the Transfer Tax. *Kay County*, 956 F. Supp. 2d at 188-89. The court further concluded that the Transfer Tax did not fall into the real property exception, noting that "[j]ust because a transfer tax is measured by the value of real property does not mean that the tax is a 'property tax.'" *Id.* at 189.

In a footnote, the district court also referenced Kay County's contention that the Entities are not federal instrumentalities. *Id.* at 189 n.5. However, it dismissed as irrelevant the County's skepticism about "whether [the Entities] should be considered federal instrumentalities for tax purposes" because the Entities' tax exemption depends not upon their instrumentality status, but instead upon the statutory language providing them immunity. *Id.*

## DISCUSSION

On appeal, the County reiterates the statutory arguments brought below—it insists that the statutory exemptions do not include indirect taxes like the Transfer Tax, and, alternatively, that the Transfer Tax falls into the real property exceptions. The County also raises a constitutional challenge asserting that the exemptions represent invalid exercises of the Commerce power absent a sufficiently explicit preemption purpose.

We review a grant of a motion to dismiss *de novo*. *Emory v. United Air Lines, Inc.*, 720 F.3d 915, 921 (D.C. Cir. 2013). Applying this standard, we agree with the district court that the exemptions encompass the Transfer Tax and that the Transfer Tax does not fall into the real property exceptions. Because the County did not present its Commerce power argument below, and concedes before us

that the district court's result may stand on the basis of statutory immunity, we need not address either of its constitutional arguments on appeal.

## A. Tax Exemption

Appellant's primary argument is that the statutory language exempting the Entities from "all taxation" does not include the Transfer Tax. According to the County, the phrase does not actually mean *all* taxation; instead, it is a term of art encompassing only direct taxation. The exemptions therefore do not include indirect taxes—like the Transfer Tax—that are levied only upon the transfer of the property.

It is "well settled that the starting point for interpreting a statute is the language of the statute itself." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56 (1987) (internal quotation omitted). When a statute's language is plain, we "must enforce it according to its terms." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). Moreover, where a statute's terms are undefined, our interpretation is guided by the terms' "regular usage." *Lopez v. Gonzales*, 549 U.S. 47, 53 (2006).

We thus begin our analysis by examining the plain language of 12 U.S.C. §§ 1452(e), 1723a(c)(2), and 4617(j)(1)-(2). Each statute clearly states that its corresponding entity "shall be exempt from all taxation [imposed] . . . by any State." Because the statute itself defines neither "all" nor "taxation," we look to the ordinary meaning of the words, which is unambiguous: all taxation clearly encompasses *all* taxation, including the Transfer Tax. *See Cnty. of Oakland v. FHFA*, 716 F.3d 935, 940 (6th Cir. 2013). To accept the County's argument to the contrary would

require the application of inapposite precedent toward an absurd result.

The County argues that *United States v. Wells Fargo Bank*, 485 U.S. 351 (1988), a case wherein the Supreme Court interpreted identical exemption language, established that the phrase "all taxation" is a term of art signifying only direct taxation. There, the Court interpreted a provision of the Housing Act of 1937 exempting certain bond-type obligations—known as Project Notes—from "all taxation now or hereafter imposed by the United States." *Id.* at 352-53, 355. Asserting that "[w]ell before the Housing Act was passed, an exemption of property from all taxation had an understood meaning," namely that the property was "exempt from *direct* taxation" but not from taxation levied merely upon its "use or transfer," the Court concluded that the exemption encompassed income taxes—which are a form of direct taxation—but not estate taxes—which are a form of indirect, excise taxation. *Id.* at 355-56.

But that case is not on point. The statute at issue in *Wells Fargo* exempted specific *property* from taxation. The statute at issue in this case exempts specific *entities*. This is a distinction with a difference: an unqualified tax exemption for specific property necessarily reaches only those taxes that act directly upon the property itself, while a similarly unqualified exemption for a specific entity may reach any and all taxes that ultimately will be borne by the entity. Because the Entities, as sellers of property in Oklahoma, would ultimately bear the burden of the Transfer Tax, *Wells Fargo* is not applicable precedent.

Instead, as several of our sister circuits have already recognized, the relevant precedent is *Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, a case that preceded *Wells*

*Fargo* and was not overruled by it. In *Bismarck*, the Supreme Court interpreted a provision of the Federal Farm Loan Act unqualifiedly exempting federal land banks from state taxation. 314 U.S. at 98-99. It found that the exemption encompassed a state sales tax that the federal bank had refused to pay when purchasing building materials from a lumber company. *Id.* at 99. Because that sales tax—like the Transfer Tax at issue here—was ultimately borne by an entity for which Congress had crafted an exemption, the Court concluded that the entity was immune from it.

*Bismarck* controls this case. The Transfer Tax is an excise tax borne by the Entities and the statutory charters provide entity—not property—exemptions. It is clear that *Wells Fargo* and *Bismarck* represent separate strains of authority dealing with different types of exemptions. *Wells Fargo* is not on point and neither overruled nor even cited *Bismarck*. Without any indication that the Court meant to eliminate the distinction between entity and property exemptions in *Wells Fargo*, we cannot accept the County's argument.

As we noted above, other courts have interpreted and applied the precedent of *Bismarck* as we do here. *See Delaware Cnty. v. FHFA*, 747 F.3d 215 (3d Cir. 2014); *Hennepin Cnty. v. Fed. Nat'l Mortg. Ass'n*, 742 F.3d 818 (8th Cir. 2014); *DeKalb Cnty. v. FHFA*, 741 F.3d 795 (7th Cir. 2013); *Cnty. of Oakland v. FHFA*, 716 F.3d 935 (6th Cir. 2013).

### B. Real Property Exception

Appellant alternatively argues that even if the Entities' exemptions encompass the Transfer Tax, Fannie, Freddie, and the FHFA are still subject to the Transfer Tax. The County

contends that the exception for real property taxes from the exemption extends to taxation of the transfer of real property. We disagree.

The statutory charters state that all of the Entities' "real property . . . shall be subject" to state and local taxation "to the same extent as other real property is taxed." 12 U.S.C. § 1723a(c)(2); *see also id.* §§ 1452(e); 4617(j)(2) (materially identical provisions). The County argues that the term "real property" includes the transfer of that property, and thus that the Transfer Tax falls within the exception. It bases this argument on the classic legal characterization of property ownership which conceives of it as the possession of a "bundle of sticks." Because the right to transfer is an integral "stick" in the "bundle," the tax is "intimately connected with the real property itself" and is thus within the exception. Not so. The Transfer Tax, which is measured by the value of the property but triggered only at its transfer, is clearly an excise tax. *Wells Fargo*, upon which the County relies, establishes the difference: excise taxes may be measured by the property's value, but they are levied upon its use or transfer and not upon its existence. 485 U.S. at 355. Here, Oklahoma's statutory taxation scheme confirms that the Transfer Tax is an excise tax: the state imposes an entirely separate ad valorem tax on real property. 68 Okla. Stat. Ann. § 2804. The Oklahoma Transfer Tax is triggered by conveyance and paid by the seller, who, at the point of payment, no longer has any right in the property conveyed. 68 Okla. Stat. Ann. §§ 3203-04. Appellant's attempt to convert the Transfer Tax into a property tax fails. *See S. Ry. Co. v. Watts*, 260 U.S. 519, 530 (1923). Once again, we note the uniform agreement of our sister circuits. *See Delaware Cnty.*, 747 F.3d at 223-24; *Hennepin Cnty.*, 742 F.3d at 822; *DeKalb Cnty.*, 741 F.3d at 801; *Montgomery Cnty. v. Fed.*

*Nat'l Mortg. Ass'n*, 740 F.3d 914, 919-21 (4th Cir. 2014); *Cnty. of Oakland*, 716 F.3d at 939 n.6.

## C. Constitutional Arguments

The County concludes by arguing that the statutory exemptions are invalid on constitutional grounds. The asserted constitutional justification for the statute is congressional authority under the Commerce Clause. The County asserts that creation of this exemption is an unconstitutional overreach. Citing *United States v. Morrison*, 529 U.S. 598 (2000), the County argues that "Congress' regulatory authority is not without effective bounds." *Id.* at 607-08. It asserts that the transfer of property being truly local, there is no effect on interstate commerce and to uphold the statutory scheme would expand the scope of the Commerce Clause at the expense of curtailing the indisputably fundamental right of the states to tax. The County goes on to note that there is a "strong background presumption against [federal] interference with state taxation." Appellant's Br. at 19 (quoting *Nat'l Private Truck Council v. Okla. Tax Comm'n*, 515 U.S. 582, 589 (1995)). Therefore, they contend, where Congress is using its power under the Commerce Clause to limit state taxation, it must have expressed a "clear and manifest purpose" to preempt state taxation. *See, e.g.*, *Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332 (1994).

We will not linger long over either step of appellant's argument. Appellant did not raise this constitutional challenge in the district court. "Generally, an argument not made in the lower tribunal is deemed forfeited and will not be entertained absent exceptional circumstances." *Flynn v. C.I.R.*, 269 F.3d 1064, 1068-69 (D.C. Cir. 2001) (quotations

and citations omitted). Appellant has made no attempt to demonstrate exceptional circumstances.

We further note that the grounds for recognizing the forfeiture of the arguments are especially strong where the alleged error is constitutional. We operate under a norm of constitutional avoidance. *Kalka v. Hawk*, 215 F.3d 90, 97 (D.C. Cir. 2000). Under that norm, we adhere to the principle that "[f]ederal courts should not decide constitutional questions unless it is necessary to do so." *Id.* (citations omitted). It is neither necessary nor even advisable here. We therefore reject appellant's constitutional challenge without further discussion.[1]

## CONCLUSION

For the reasons set forth above, the judgment of the district court is affirmed.

---

[1] We note that appellant also raises and argues the point that because Fannie Mae and Freddie Mac are no longer purely federal entities, they are not entitled to "constitutional immunity." Appellants raised this issue in a footnote in the district court. The district court rejected it in a footnote to its own opinion. *See Kay County*, 956 F. Supp. 2d at 189 n.5. We agree with the district court that this argument warrants no more than marginal mention, as it is irrelevant to the issue of statutory immunity.