In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 16-4140

FEDERAL NATIONAL MORTGAGE ASSOCIATION, *et al.*,

*Plaintiffs-Appellees*,

*v.*

CITY OF CHICAGO, *et al.*,

*Defendants-Appellants*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 CV 9150 — **Sara L. Ellis**, *Judge*.

_____

ARGUED SEPTEMBER 20, 2017 — DECIDED OCTOBER 30, 2017

_____

Before MANION and KANNE, *Circuit Judges*, and MILLER,
*District Judge*.*

KANNE, *Circuit Judge*. In 2013, this court held that state and
local taxing authorities could not charge the Federal National
Mortgage Association, Federal Home Loan Mortgage Corpo-
ration, or Federal Housing Finance Agency with real estate

_____

* The Honorable Robert L. Miller, Jr., United States District Court for the
Northern District of Indiana, sitting by designation.

transfer taxes, because such taxes are preempted by federal laws exempting these entities from all taxation. We must now determine whether the federal statutory exemptions apply when the transfer tax is charged to a private buyer who purchases real estate from one of the exempt federal entities. The district court concluded that, because the imposition of a transfer tax impacts the price the federal entities can charge for real property, the tax is unconstitutional regardless of who is required to pay it. Because this conclusion is contrary to the plain language of the tax exemption provisions, the judgment of the district court is reversed.

## I.    BACKGROUND

The Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporation ("Freddie Mac") are federally chartered, privately owned corporations. They were created by Congress to bolster the housing market by establishing a secondary mortgage market. In 2008, Fannie Mae and Freddie Mac were placed into conservatorship, and the Federal Housing Finance Agency (FHFA) was appointed as conservator. Fannie Mae and Freddie Mac generally carry out their mission by purchasing mortgages from third party lenders, bundling or pooling the mortgages, and then selling securities backed by the mortgages. When a borrower defaults, the mortgage-holding entity (Fannie Mae or Freddie Mac) forecloses and takes title to the real estate securing the loan. The mortgage-holding entity then sells the foreclosed property to a private buyer. Between August 2013 and December 2014, Amy Wettersten, Rama Group International, Inc., Angel Ramos, Barbara Ramos, and Veeral Patel ("the buyers") purchased real property in Chicago from Fannie Mae.

The City of Chicago imposes a Real Property Transfer Tax on the transfer of real property located within Chicago. Chi., Ill. Municipal Code § 3-33-030. The "primary incidence of the tax and the obligation to pay the tax are on the purchaser, grantee, assignee, or other transferee" of the property. *Id.* § 3-33-030(C). This is referred to as the "City portion" of the transfer tax. A supplemental tax, referred to as the "CTA portion" of the transfer tax, is to be paid by the transferor, unless the transferor is exempt by operation of state or federal law, in which case the transferee is held responsible for that portion of the tax as well. *Id.* § 3-33-030(F). The tax is due upon the earlier of the delivery or the recording of the instrument of transfer. *Id.* § 3-33-030(B)(1).

None of the buyers paid the transfer tax when they received or recorded the titles to the properties they purchased from Fannie Mae. The Illinois Department of Finance assessed the buyers for the tax, and the buyers protested on the basis that Fannie Mae, Freddie Mac, and FHFA are exempt from all taxation. An administrative law judge in the Department of Finance ruled that each buyer was liable for the tax, and the director of the Department affirmed. The buyers and the federal entities (together, the plaintiffs-appellees) sued the City of Chicago and its relevant taxing officials in federal court seeking review of the Department's decision.

The district court for the northern district of Illinois concluded that the tax was preempted by the federal exemption statutes. Accordingly, the court granted summary judgment for the appellees, issued declarations stating that the transactions were exempt from taxation, and issued an injunction barring the City from collecting the taxes from the federal en-

tities or the buyers. The district court also denied the appellants' motion to dismiss for lack of jurisdiction, which the appellants do not challenge on appeal.

## II.    ANALYSIS

The Supremacy Clause of the United States Constitution provides that "the laws of the United States … shall be the supreme Law of the Land; … any Thing in the Constitution or Laws of any State to the contrary notwithstanding." U.S. Const. art. VI, cl. 2. "[S]tate law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)).

The appellees contend that the Chicago Real Property Transfer Tax conflicts with the tax exemption provisions in the federal statutes governing Fannie Mae, Freddie Mac, and FHFA and, therefore, that the tax is "without effect." In *DeKalb County*, this court held that the federal tax exemptions preempted such a tax, insofar as the tax was charged to Fannie Mae, Freddie Mae, or FHFA. 741 F.3d 795 (7th Cir. 2013). All other circuits that have addressed this issue reached the same conclusion. *Montgomery Cty. Comm'n v. Fed. Hous. Fin. Agency*, 776 F.3d 1247, 1255 (11th Cir. 2015); *City of Spokane v. Fed. Nat'l Mortg. Ass'n*, 775 F.3d 1113 (9th Cir. 2014); *Town of Johnston v. Fed. Hous. Fin. Agency*, 765 F.3d 80 (1st Cir. 2014); *Bd. of Cty. Comm'rs v. Fed. Hous. Fin. Agency*, 754 F.3d 1025 (D.C. Cir. 2014); *Delaware County v. Fed. Hous. Fin. Agency*, 747 F.3d 215 (3d Cir. 2014); *Hennepin County v. Fed. Nat'l Mortg. Ass'n*, 742 F.3d 818 (8th Cir. 2014); *Montgomery County v. Fed. Nat'l Mortg. Ass'n*, 740 F.3d 914 (4th Cir. 2014); *County of Oakland v. Fed. Hous. Fin. Agency*, 716 F.3d 935 (6th Cir. 2013).

We must now determine whether the scope of the exemptions expands so far as to exempt individuals who purchase property from the federal entities. We review the district court's grant of summary judgment in favor of the appellees on this issue *de novo*. *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017). A grant of summary judgment is appropriate if "there is no genuine dispute as to any material fact," and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All parties agree that there are no genuine issues of fact remaining in this case.

Taxation authority is recognized as central to state sovereignty. *Dep't of Revenue v. ACF Indust., Inc.*, 510 U.S. 332, 345 (1994). Therefore, "we are hesitant to extend the statute beyond its evident scope." *Id.* "[A]bsent unambiguous evidence" to the contrary, we will not "infer a scope of pre-emption beyond that which clearly is mandated by Congress' language." *Cipollone*, 505 U.S. at 533 (Blackmun, J., concurring). "We will interpret a statute to pre-empt the traditional state powers only if that result is 'the clear and manifest purpose of Congress.'" *Dep't of Revenue*, 510 U.S. at 345 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)); *see DeKalb County*, 741 F.3d at 802 (applying the "clear and manifest purpose" standard to interpret the same tax exemptions at issue in this case).

As with any statute, we look first to the plain language of the federal tax exemption provisions. The language of the statute itself is considered the best indicator of Congress's intent. "'Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'" *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1152 (7th Cir. 2016) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania*,

*Inc.*, 447 U.S. 102, 108 (1980)). The appellants argue that the plain language of the statutes limits the tax exemption to the federal entities and that Congress has not clearly expressed an intent to the contrary.

## A. *Plain Language of the Exemptions*

The statutes governing Fannie Mae, Freddie Mac, and FHFA each contain provisions that exempt the corporations or agency from "all taxation." The provisions also exempt each entity's franchise, capital, reserves, and income. For the most part, the provisions are identical. The exemption for Fannie Mae, however, includes "its … mortgages," and the exemption for Freddie Mac includes "its … activities."

Specifically, the statute governing Fannie Mae states:

> "The Corporation, including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, shall be exempt from all taxation now or hereafter imposed by any State, territory, possession, Commonwealth, or dependency of the United States, or by the District of Columbia, or by any county, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed."

12 U.S.C. § 1723a(c)(2).

The statute governing Freddie Mac states:

> "The Corporation, including its franchise, activities, capital, reserves, surplus, and income, shall be exempt from all taxation now or hereafter imposed by

> any territory, dependency, or possession of the United States or by any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed."

12 U.S.C. § 1452(e).

And the statute governing FHFA states:

> "The Agency, including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Agency shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of the value of such property, and the tax thereon, shall be determined as of the period for which such tax is imposed."

12 U.S.C. § 4617(j)(2).

Each provision is specific to the federal entity and *its* various assets. Nothing in the language of these provisions addresses parties that transact with the exempt entities. Several of the courts of appeals have described these exemptions as "entity-specific." *E.g. DeKalb County*, 741 F.3d at 800 ("Fannie's tax exemption … exempts an entity…."); *Delaware County*, 747 F.3d at 222 ("this case involves exemption of *enti-*

*ties*"); *Bd. of Cty. Comm'rs*, 754 F.3d at 1029 ("The statute at issue in this case exempts specific *entities*."); *Montgomery Cty. Comm'n*, 776 F.3d at 1256 ("[T]his case involves exemptions of entities.").

The exemption provisions do not specifically address transactions entered into by the federal entities, and such transactions should not be read into the "including" phrases of the provisions. Although the use of the term "including" does not signal an exhaustive list, the list "connotes … an illustrative application of the general principle." *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941). In each of the provisions, the listed items are assets or property of the federal entity. *DeKalb County*, 741 F.3d at 800 (describing the exemption list as consisting "largely of different forms of property"); *see Black's Law Dictionary* (8th ed. 2004) (defining "franchise" as "the right conferred by  government to engage in a specific business or to exercise corporate power;" "capital" as "money or assets invested, or available for investment, in a business;" "reserves" as "something retained or stored for future use, esp., a fund of money set aside by a bank or insurance company to cover future liabilities;" "surplus" as "excess of receipts over disbursements;" "mortgage" as "a conveyance of title to property that is given as security for the payment of a debt or the performance of a duty and that will become void upon payment or performance according to the stipulated terms;" and "income" as "the money or other form of payment that one receives, usu. periodically, from employment, business, investments, royalties, gifts, and the like").

Transactions are not assets or property. *See Black's Law Dictionary* (8th ed. 2004) (defining "transaction" as "the act or an instance of conducting business or other dealings, esp., the

formation, performance, or discharge of a contract"). Therefore, an exemption for transactions cannot be read into the plain language of the statutes.

Nor can transactions be considered an element of any of the specified exempt assets listed in the statutes. In *Pittman v. Home Owners' Loan Corp. of Wash., D.C.*, 308 U.S. 21 (1939), the U.S. Supreme Court reviewed whether a tax on recording deeds was preempted by a federal law exempting the Home Owners' Loan Corporation from state and local taxation. The Home Owners' Loan Act included a tax exemption very similar to those at issue in this case: the "Corporation, its franchise, capital, reserves and surplus, and its loans and income shall be exempt from all state or municipal taxes." *Id.* at 31 & n.3 (quoting 12 U.S.C. § 1463(c)). The Court focused on the term "loans" and determined that the use of that term was meant to shield from taxation the entire process of lending, including mortgages given to secure loans. *Id.* Because a mortgage and its recordation are "indispensable elements in the lending operations authorized by Congress," the Court concluded the federal exemption preempted the recording tax, regardless of who recorded the deed and thus was taxed. *Id.* at 32.

For *Pittman* to apply, we would need to find that transferring property is an "indispensable element" of one of the exempt assets listed in the exemption provisions. Transferring property is not an element of the entities' franchise, capital, reserves, surplus, loans, or income. The Fannie Mae provision also exempts the corporation's mortgages. Buying property often involves a mortgage, but the sale of property here was not an element of any mortgage held by Fannie Mae. The Freddie Mac provision exempts the corporation, "including

its … activities" from all taxation. Transferring property can logically be understood as an activity. However, given the transfer tax is owed by the transferee upon delivery or recording of the instrument of transfer, the tax is better understood as one imposed on the transferee's receipt of property rather than a tax imposed on the act of selling property by Freddie Mac. Thus, there is nothing in the plain language of the exemptions that indicates that the "clear and manifest purpose of Congress" was to exempt from taxation entities that transact with Fannie Mae, Freddie Mac, and FHFA.

### B. Congressional Intent

The appellees contend that this interpretation is contrary to what Congress intended when it exempted Fannie Mae, Freddie Mac, and FHFA from taxation. Taxation, regardless of who has the direct obligation to pay, affects both parties to a transaction. If the buyer of a product or service is charged a tax, the seller must lower its price to compensate for the increased cost. The appellees argue that if buyers are required to pay the real estate transfer tax, Fannie Mae, Freddie Mac, and FHFA will have to lower the price of the real estate they sell. As a result, the federal entities will have less capital available for investing in the secondary mortgage market. Since the entities were created to invest in and stabilize that market, charging the tax to those who buy property from the federal entities harms the mission of the entities. The appellees, relying on *Laurens Fed. Sav. & Loan Ass'n v. S. Carolina Tax Comm'n*, 365 U.S. 517 (1961), argue that the tax is preempted because of this effect.

In *Laurens Fed. Sav. & Loan Ass'n*, the Supreme Court addressed whether a state could require a borrower to pay taxes on promissory notes executed in favor of a Federal Home

Loan Bank. The Federal Home Loan Bank Act of 1932 exempted "the bank, including its franchise, its capital, reserves, and surplus, its advances, and its income" from all taxation. *Id.* at 519 (quoting 12 U.S.C. § 1433). The Court looked at the language of the exemption and the legislative history of the Act as a whole and concluded that the tax, even when levied against those transacting with the Bank, was preempted. *Id.* at 522.

> "Regardless of who pays the documentary stamp taxes here at issue, the necessary effect of the taxes is to increase the cost of obtaining the advances of funds from the Home Loan Bank to be used in making loans to home owners. In its impact, therefore, this tax, whether nominally imposed on the Bank or on the petitioner, is bound to increase the cost of loans to home owners and thus contravene the basic purpose of Congress in insulating these advances from state taxation."

*Id.* at 522–23.

While the tax at issue here likely has some impact on the federal entities even when charged to buyers, it is not clear that the burden falls on something Congress intended to shield. The language quoted from *Laurens Fed. Sav. & Loan Ass'n* addresses consistency with Congress's intent to shield "advances" from taxation, not consistency with Congress's general intent when creating the Federal Savings and Loan Bank. "Advances" were specifically included in tax exemption provision. The tax on promissory notes was found to be a tax on advances and thus the plain language of the exemption applied. The Court's discussion of congressional purpose merely supported that interpretation of the plain language. *Id.* ("In its impact … this tax … is bound to increase the cost of

loans … and thus contravene the basic purpose of Congress *in insulating these advances* from state taxation.") (emphasis added). Again, the appellees have not demonstrated why transferring property should be considered an element of the federal entities' "franchise[s]," "mortgages," "income" or other assets specifically exempted in the statutes.

Furthermore, just because a tax has an effect on an entity does not make it a tax on that entity. *See United States v. New Mexico*, 455 U.S. 720, 734 (1982) ("[Constitutional] immunity may not be conferred simply because the tax has an effect on the United States, or even because the Federal Government shoulders the entire economic burden of the levy."). In *United States v. City of Detroit*, 355 U.S. 466 (1958), the Supreme Court considered whether the constitutional prohibition on states taxing federal government entities extended to those doing business with federal government entities. A state tax on leased property was assessed against a private corporation that rented property owned by the federal government. *Id.* at 468. The government argued that the tax should be considered a tax on the government or its property, because, when a tax is imposed on a lessee who rents from the government, the government cannot charge as high rentals. *Id.* at 472. The Court rejected this argument, noting that it had ruled in numerous cases that "the imposition of an increased financial burden on the Government does not, by itself, vitiate a state tax." *Id.* The Court further commented that Congress could have legislatively extended tax immunity to other parties and had declined to do so. *Id.* at 474. Therefore, the tax could be collected from those who rented from the government. *Id.* at 475. While this case involves the breadth of constitutional immunity, not statutory immunity, we see no reason why the same logic should not apply, especially in light of the Court's

warning that a tax exemption should not be granted by impli-cation. *Chickasaw Nation v. United States*, 534 U.S. 84, 95 (2001) (referring to "the canon that warns us against interpreting federal statutes as providing tax exemptions unless those ex-emptions are clearly expressed"); *United States v. Wells Fargo Bank*, 485 U.S. 351, 354 (1988) ("[E]xemptions from taxation are not to be implied; they must be unambiguously proved.").

## III.   CONCLUSION

We will interpret a statute to pre-empt the traditional state power of taxation only if that result is the "clear and manifest purpose of Congress." The plain language of the federal tax exemption provisions does not shield from state and local tax-ation individuals or corporations that transact with Fannie Mae, Freddie Mac, or FHFA, and there is no other evidence that Congress intended for the exemptions to apply to those who buy property from the exempt entities. Charging a trans-fer tax to such buyers may affect the exempt entities, but it does not result in a tax on the entity itself or on any of the entity's exempt assets or property. Therefore, we cannot say that exempting the buyers from taxation was the "clear and manifest purpose of Congress." For these reasons, the judg-ment and orders of the district court are REVERSED, the in-junction barring the City from collecting the taxes is DISSOLVED, and this case is remanded to the district court for proceedings consistent with this opinion.